# Wytheville

## BOYD v. BOYD.

### June 11, 1914.

1. LIBEL AND SLANDER—*Insults—Measure of Damages—Verdicts.*—In an action, under the statute, for insulting words, there is no rule of law fixing the measure of damages, nor can it be reached by any process of computation. In such cases, the jury is regarded as the best and safest tribunal to determine not only the character of the alleged insulting words, but also the measure of damages, and its verdict will not be set aside in this State, unless it is so grossly excessive (or inadequate) as to indicate that the jury, in rendering it, were actuated by prejudice, passion, or corruption, or that they were misled by some mistaken view of the case.

2. LIBEL AND SLANDER—*Damages—Witnesses—Impeachment.*—In an action for defamation, where the speaking of the insulting words is admitted, the character of the witnesses who testify only as to the language used and the circumstances attending its utterance, and not as to the damages sustained, is of no value in determining the damages sustained.

3. VERDICTS—*Excessive Damages—Reduction.*—If the court has no right to set aside a verdict as excessive—there being no measure of damages—it has no right to put a party upon terms to accept a less amount than that fixed by the verdict.

4. LIBEL AND SLANDER—*Punitive Damages—Proof of Pecuniary Loss.* It is not necessary to prove actual pecuniary loss resulting from the utterance of insulting words in order to warrant a recovery of punitive damages. The law presumes that damages result from the utterance of insulting words, made actionable by the statute, just as it does where the words uttered are actionable *per se.* It is not necessary in either case in order to recover, to prove actual or pecuniary loss.

5. LIBEL AND SLANDER—*Publication.*—A slanderous or insulting message sent, through a third person, by the defendant to the plaintiff, and delivered to the latter in the presence of her husband is a publication.

Error to a judgment of the Corporation Court of the city of Lynchburg in an action of trespass on the case. To a judgment for the plaintiff for one-half of the amount found in her favor by the jury, the plaintiff assigns error.

*Reversed.*

The opinion states the case.

*John L. Lee* and *Volney E. Howard,* for the plaintiff in error.

*Harrison & Long, Wilson & Manson* and *T. G. Hobbs,* for the defendant in error.

Buchanan, J., delivered the opinion of the court.

The only question raised in the petition for this writ of error is whether or not the corporation court erred in holding that it would set aside the verdict and grant a new trial unless the plaintiff would accept $1,500 in lieu of the verdict in her favor for $3,000.

The plaintiff accepted the $1,500 under protest. The motion of the defendant to set aside the verdict because it was contrary to the law and the evidence and because the damages awarded were excessive, and grant a new trial, was overruled and judgment entered for the $1,500. To that judgment this writ of error was awarded upon the petition of the plaintiff under the provisions of sections 657 and 658, 3 Va. Code; Acts 1906, p. 251. Burks' Pl. & Pr. pp. 541-543.

This was an action for insulting words. In such cases there is no rule of law fixing the measure of damages, nor can it be reached by any process of computation. Where that is the case, the general, if not the universal, rule in this State is, that the verdict of the jury will not be set

aside unless it is so grossly excessive (or inadequate) as to indicate that the jury in rendering it were actuated by prejudice, passion or corruption, or that they have been misled by some mistaken view of the merits of the case. *Southern Ry. Co.* v. *Smith,* 107 Va. 553, 560, 59 S. E. 372, and cases cited; *N. & W. Ry Co.* v. *Shott,* 92 Va. 34, 47-8, 22 S. E. 811; *C. & O. Ry. Co.* v. *Harris,* 103 Va. 635, 643, 49 S. E. 997.

There is no suggestion that the jury were influenced by corrupt motives or that they were misled by any mistaken view of the case. The contention of the defendant is that the jury, in fixing the damages awarded, were governed or influenced by prejudice or passion. The nature of the case, the amount of the verdict and the character of the evidence supporting it are relied on as relevant facts to show prejudice or passion on the part of the jury.

The case is an unusual one in some of its aspects. The parties are step-mother and step-son. It is better as a rule for family differences to be settled in the family rather than in the court-house. There is no rule of law, however, which prevents a step-mother from resorting to a court of law for redress when wronged by her step-son.

The words spoken of and concerning the plaintiff by the defendant, as charged in her declaration and the circumstances attending their utterance, as testified to by one of the plaintiff's witnesses, are as follows:

"That on March the 14, 1913, she was a servant in the family of Mr. E. W. Boyd, who resided with his wife at their home in the city of Lynchburg, Virginia; that Mr. E. W. Boyd was ill, and his wife, the plaintiff, was sitting in the room with him; that Mr. Boyd told her, the witness, to go out in the yard and tell one of his sons to come in and get a prescription which Mr. Preston had left to be filled and take it to the drug store; that in

obedience to Mr. Boyd's instructions, she went out and first saw Thurmond Boyd, one of the sons of Mr. E. W. Boyd, and delivered his father's message to him; that Thurmond Boyd told her he could not go, and to tell his brother Harry (the defendant in this case) to go; that she found Harry Boyd in the yard and delivered his father's message to him; that Harry Boyd said, 'Go back and tell him to make that damn bitch that sits dressed up by him all the time go;' that she returned to the house and delivered this message to Mr. E. W. Boyd, the husband of the plaintiff, in the presence of the plaintiff."

The message sent was delivered to the plaintiff's husband in her presence and afterwards the defendant, in the presence of both of them and another, admitted that he had sent the message and that he meant what he said.

The words used of and concerning the plaintiff are among the most offensive and insulting in the language. The circumstances under which the message was delivered aggravated the wrong, and the subsequent declaration of the defendant that he meant what he said shows that the charge was deliberately made. The request to the defendant to have the physician's prescription for his father filled was not made by the plaintiff. She had nothing to do with it. So far as the record shows the charge made against the plaintiff was without the slightest foundation, and was made without anything to excuse or mitigate it. It is not perceived how the character of the witnesses can be of value in determining whether or not the damages awarded were excessive. They did not testify as to the damages, but only as to the language used and the circumstances attending its utterance.

The damages awarded do seem large, but that was a question especially for the jury. By the statute giving a right of action for insulting words, when first enacted,

it was provided that "No plea, exception or demurrer shall be sustained . . . to preclude a jury from passing thereon, who are hereby declared the sole judges of the damages sustained." Act July 26, 1810; 4 Min. Inst. (1st ed.) 383. While that provision in the statute has been changed so as to provide merely that "No demurrer shall preclude a jury from passing thereon" (the insulting words), and the court has the power to correct any manifest departure from right and justice on the part of the jury, still the jury is regarded as the best and safest tribunal to determine not only the character of the alleged insulting words, but also the measure of damages. *Carr* v. *Lewis,* 94 Va. 24, 26, 26 S. E. 385.

In 18 Am. & Eng. Enc. L., p. 1115, it is said, and the statement seems to be fully sustained by the cases cited in the notes, that in cases of libel and slander, "A verdict of a jury will not be disturbed unless the amount awarded is so grossly disproportionate to the injury and unreasonable under the circumstances of the case as to shock the moral sense and raise a presumption that the jury acted under the influence of gross error, partiality, passion, prejudice or corruption, or, it has been said, unless their disregard of proper instructions is apparent upon the record, or strong circumstances of mitigation appear." *Douglas* v. *Tousey,* 2 Wend. 352; *Root* v. *King,* 7 Cowan 613, 633-4; *Shute* v. *Barrett,* 7 Pick. 82.

The defendant cited several cases from other jurisdictions showing that verdicts have been reduced by the courts. Among these are the cases of *Riker* v. *Clopton,* 82 N. Y. S. 65, and *Noble* v. *Harrison,* 2 McCord L. 230. In the former case the verdict was for $17,000, founded upon a charge of unchastity made in the presence of the plaintiff's mother, sister and former husband. The recovery was reduced to $1,738. In the other case the charge was for prostitution and the verdict reduced was

for $5,000. But in both cases the evidence showed miti-
gating circumstances.

In *Blakeman* v. *Blakeman,* 31 Minn. 396, 18 N. E. 103,
where the charge was adultery of a married woman who
had separated from her husband, the verdict was for
$4,000. In *Bloomfield* v. *Pine,* 84 Neb. 472, 121 N. W. 716,
in which the charge was improper relations of the plain-
tiff, who was a school teacher, with the defendant, there
was a verdict for $3,500. Both these verdicts were sus-
tained as not being excessive.

Considering all the facts and circumstances of this
case, we do not think that the amount of damages
awarded by the jury was so grossly excessive as to shock
the moral sense or to indicate that the jury in rendering
it were actuated by prejudice or passion. If the court
had no right to set aside the verdict upon the ground
that it was excessive, of course it had no right to put
the plaintiff upon terms to take a less amount than that
fixed by a verdict which it had no right to disturb.

The defendant does not assign cross-error, as provided
by Rule VIII, but suggests that the trial court erred in
not setting aside the verdict on his motion, upon the
ground that it was contrary to the law and the evidence,
in this, first, that the words complained of were not pub-
lished, and, second, that in the absence of actual damages
there can be no recovery of punitive damages.

It is unnecessary in this case to consider whether or
not publication is necessary to maintain an action for in-
sulting words, since if it be it is clear that there was a
publication in this case. Neither was it necessary for the
plaintiff to prove actual pecuniary loss resulting from
the utterance of the insulting words in order that the
jury might give punitive damages. The law presumes
that damages result from the utterance of insulting
words, made actionable by our statute, just as it does

where the words uttered are actionable *per se;* and it is not necessary in either case, in order to recover, to prove actual or pecuniary loss.

The judgment complained of must be reversed, and this court will enter such judgment on the verdict as the corporation court ought to have entered.

*Reversed.*