𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## NORFOLK POST CORPORATION, A CORPORATION, v. MILTON T. WRIGHT.

### December 18, 1924.

1. LIBEL AND SLANDER—*Newspapers—Correctness of Information—Case at Bar.*—In the instant case, an action for libel against a newspaper, the reporter who was the author of the article in question testified that it but restates information detectives gave him.

   *Held:* That the correctness of this information was a risk assumed by the publisher.

2. LIBEL AND SLANDER—*Newspapers—Headlines.*—In the instant case, an action against a newspaper for libel, the article in question substantially supported the headlines, but if it did not, the law is that unsupported headlines may be in themselves libellous.

3. LIBEL AND SLANDER—*Newspapers—Accusation of Crimes in one Locality Based on Warrant for Crime in another Locality—Case at Bar.*—In the instant case, plaintiff, a man apparently of excellent character, was arrested and discharged for a burglary in "Riverview" and defendant newspaper published an article under the caption "Suspect nabbed." "Man held in Colonial Place robberies." Both places were residential suburbs of Norfolk near each other but not contiguous.

   *Held:* That while it might have been argued that "Colonial Place Robberies" was a generic term: that "Colonial Place" and "Riverview" were interchangeable, and that the statement was no more damaging than one literally correct would have been, yet this was not true as a matter of law but was for the jury, and a verdict for plaintiff was not unsupported by the evidence. These offenses might have differed in degree and the damage might have been nominal or substantial; this, too, was for the jury.

4. LIBEL AND SLANDER—*Newspapers—Damages—Other Publications—Case at Bar.*—In the instant case, an action for libel, it was assigned as error that the court refused, on cross-examination, to allow plaintiff to be asked if the same statement published by defendant had been published by another paper. It was claimed that this should have been allowed to show mitigation of damages.

   *Held:* No error.

5. LIBEL AND SLANDER—*Newspapers—Damages—Other Publications.*—Evidence, in actions for libel against newspapers, of similar publications in other newspapers, is sometimes admitted in mitigation of damages when it but repeats reports theretofore published, particularly when this appears upon the face of the libel. But it is not admitted when the publications are simultaneous and in no wise connected.

Error to a judgment of the Court of Law and Chancery of the city of Norfolk, in an action for libel. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Wolcott, Wolcott & Lankford* and *W. L. Devany, Jr.,* for the plaintiff in error.

*Alfred Anderson,* for the defendant in error.

HOLT, J., delivered the opinion of the court.

Milton T. Wright was arrested in Norfolk on July 14, 1922. The circumstances attendant upon this arrest so far as they are relevant are as follows:

Just preceding this date there had been a series of burglaries in Colonial Place and Riverview, residential sections of Norfolk lying just south of Lafayette river near each other but not contiguous.

Several special officers were detailed to cope with this outbreak of lawlessness, one of them was detective Leon Nowitzky. To him had been reported the recent looting of the home of P. W. Powell, east 39th street, in Riverview. While on this special detail his attention was directed to plaintiff and to a companion of his, Overton; these men he stopped and questioned. They told him that they were working for the Dixie Motor

Car Company, and were making a house to house canvass in an effort to sell automobiles.   Nowitzky called up that company over the telephone and verified this information.   He then, possibly with some reluctance, permitted them to go about their business.   All of this took place in Riverview and on July the 13th.   That afternoon he received some additional information tending to confirm his suspicion as to Wright and on the following day, in company with a fellow officer, Williams, went to Wright's place of business and brought him and Overton to the police station where he was identified by a Mrs. Smallwood, the mother of Mrs. P. W. Powell, as the man seen at her daughter's home.   Thereupon a warrant of arrest was sued out formally charging him with that crime.   It is not entirely clear that an arrest was made at the Dixie Motor Car Company's place of business.   There is evidence tending to show that these men came voluntarily to the police station and were first arrested there on said warrant.   In any event a formal warrant then issued.   They were held on it, bailed and discharged after a preliminary hearing.   At that trial or preliminary hearing nothing was said about Colonial Place robberies, the investigation was limited to the offense charged in the warrant of arrest.   Plaintiff appears to have been a man of excellent reputation.

The defendant corporation publishes an afternoon paper in the city of Norfolk, and on the day of this arrest published an account of this incident.   It is that publication which is the basis of this action and which contains the alleged libel.   It is:

"Suspect nabbed.

"Man held in Colonial Place robberies.

"Milton T. Wright, twenty-five, Portsmouth, was arrested shortly before noon today by detectives Nowitzky and Williams on Jamestown avenue, in connec-

24

tion with the burglary of numerous houses in Colonial Place recently." On this action was brought and there was a verdict and judgment for the plaintiff, which we are asked to set aside.

There are three assignments of error. The first, because the court refused to set aside the verdict as being without evidence to support it; the second, because of instructions given, while the third is based upon the refusal of the court to admit certain evidence claimed to be proper.

Defendant says there was no libel, but that the facts stated in this publication are substantially true. When Nowitzky halted and examined the plaintiff in Riverview, on 39th street, on July the 13th, the crime then immediately in his mind was the Powell robbery in Riverview and it was upon new evidence connected therewith that he brought Wright to the police station on the following day, where, after further examination, a warrant was issued which reads in part as follows:

"Whereas, officer L. Nowitzky, No. _____ street, has this day made complaint and information on oath before me, William T. Anderson, a justice of said city, that on the 11th day of July, 1922, at said city, Milton T. Wright, No. _____street, did unlawfully and feloniously break and enter the home of P. W. Powell, 268 east 39th street, in the day time, and did take, steal and carry away from therefrom, etc."

[1] Mr. Chase, the reporter who was the author of the article, testified that it but restates and accurately states information the detectives gave him. The correctness of this information was a risk assumed. *Stevens* v. *Commercial-News Co.*, 164 Ill. App. 6.

On the face of the record Wright was not "held in Colonial Place robberies." He was arrested and held for house breaking in Riverview.

· [2] The article itself substantially supports the head-
lines, but if it did not, the law is that unsupported head-
lines may be in themselves libellous. In an extended
note to *McAllister* v. *Detroit Free Press Co.*, 15 Am. St.
Rep. 347, it is said:

"The ¡headline of an article or paragraph, being so
conspicuous as to attract the attention of persons who
look casually over a paper without reading all its con-
tents, may itself inflict very serious injury upon a per-
son, both because it may be the only part of the article
which is read, and because it may cast a graver impu-
tation than all the other words following it. There is
no doubt that in publications concerning private per-
sons, as well as in all other publications which are
claimed to be libellous, the headlines directing atten-
tion to the publication may be considered as a part of
it, and may even justify a court or jury in regarding the
publication as libellous when the body of the article is
not necessarily so."

[3] It could have been, and doubtless was, argued
with great force that "Colonial Place robberies" was a
generic term and covered the series of crimes lately per-
petrated in a particular section of Norfolk. And the
jury might have believed that "Colonial Place" and
"Riverview" were comprehensive and interchangeable
terms used to designate a general residential section of
that city harassed by a persistent thief. So also it was
proper to argue that to publish one as suspected of
robbing "A" when he was in fact suspected of robbing
"B" could do no damage beyond what a statement lit-
erally correct would have done. All of this may be
true, but it was not true as a matter of law, and if it was
true as a matter of fact, it was for the jury to say.
These offenses might have differed in degree and the

damage might have been nominal or substantial; this, too, was for the jury.   25 Cyc. 463.

That the statement made is not in exact accord with the facts admits of no dispute.   Wright was arrested for housebreaking in Riverview.   He was held for that crime and at his trial Colonial Place was not even mentioned.   The character of the charge was a matter of public record and had the reporter seen fit to examine it rather than to rely upon the statement of the detectives this litigation could never have arisen.   The verdict is not without evidence to support it and so this assignment is overruled.

The next assignment of error is predicated upon the proposition that the article was true; and that it was therefore error to give any instructions based upon the theory that it was not, or under which a recovery could be had.   It follows from what has just been said that this assignment is without merit.

[4] And lastly, exception is taken to the refusal of the court to permit Wright, on cross-examination, to be asked if the same statement published by the defendant had been published by the Ledger-Dispatch, another afternoon Norfolk paper.   These publications bear a . common date.   The claim being that this should have been admitted in mitigation of damages.

In support of this we are referred to 17 R. C. L. page 414, where it is said:

"Evidence showing that similar charges have been made by others has generally been held inadmissible to prove the truth of the defamatory words, but in an action of libel against the publisher of a newspaper for charging that the jury perjured themselves in rendering a verdict, evidence that other newspapers, published in the place where the verdict was rendered, severely criticized the action of the jury as extraordinary, has been

held admissible in justification." To sustain the latter proposition *Welch* v. *Tribune Pub. Co.*, 83 Mich. 661, 47 N. W. 562, 11 L. R. A. 233, 21 Am. St. Rep. 629, is cited. It will be noted that the authority just quoted states that this testimony was competent to establish justification and not mitigation of damages. In the Michigan case it appears that "the verdict was characterized as extraordinary, and the testimony (other publications) tended to show that the public regarded it as such." That is to say the court was dealing with proof to establish the libel rather than with evidence in mitigation thereof. That the article in the instant case was a libel unless true, admits of no doubt. Next is cited 17 R. C. L. 449, note 5. It is there said: "According to many authorities, the defendant in an action for libel or slander may show other publications, made prior to his own and to the same effect, in mitigation of damages, the ground being that such evidence tends to show want of actual malice or bad faith in many instances. Thus it has been held that a newspaper publisher, when sued for libel, may show, in mitigation of damages, that prior to publishing the alleged libel he had seen the same matter in other newspapers. Some authorities, however, have denied the right to show other publications in mitigation of damages in action for libel, and slander."

*Hoboken Printing Co.* v. *Kahn*, 59 N. J. L. 218, 35 A. 1053, 59 Am. St. Rep. 585, is also relied upon. That case shows that the defendant but restated a rumor already in wide circulation.

The distinction above made is not always followed. Judge Holmes, now Mr. Justice Holmes, in *Burt* v. *Advertising News Co.*, 154 Mass. 238, 28 N. E. 1, 13 L. R. A. 97, said: "As a general proposition the defendant cannot show that the plaintiff's damages are less than they

otherwise would have been because the charge had been made and published before."

To the same effect see *Sun Printing and Publishing Association* v. *Schenck*, 40 C. C. A. 163, 98 Fed. 925, which holds: "No one can say which of many defamations has destroyed or materially impaired a reputation; or whether, but for the last, the earlier ones would have made any grave impression upon the opinion of the public. It would be idle to submit such an inquiry to a jury."

See also *Gray* v. *Publishing Co.*, 35 App. Div. 286, 55 N. Y. S. 35, and *Smith* v. *Sun Printing Association*, 5 C. C. A. 91, 55 Fed. 240. In *McDuff* v. *Detroit Evening Journal Co.*, 84 Mich. 1, 47 N. W. 671, 22 Am. St. Rep. 673, the court said: "In an action of libel founded on a newspaper article an editorial in any other paper upon the same subject matter as that in suit, but not shown to be the basis therefor, was inadmissible." And so also *Dorn & McGinty* v. *Cooper*, 139 Iowa, 742, 117 N. W. 1, 118 N. W. 35, 16 Ann. Cas. 744; and *Folwell* v. *Providence Journal Co.*, 19 R. I. 551, 37 Atl. 6.

[5] Authorities might be multiplied, but it is not necessary. The substance of them is that such evidence is sometimes admitted in mitigation of damages when it but repeats reports theretofore published, particularly when this appears upon the face of the libel. But it is not admitted when the publications are simultaneous and in no wise connected.

The verdict is not without evidence to support it.

The instructions are good.

The evidence excluded should have been excluded.

The verdict was approved by the learned judge who presided at the trial and heard the evidence, and we, under the facts as they are detailed in the record, and

under settled rules of law, have no power to interfere with it.

It follows that the verdict of the jury and the judgment of the court in confirmation thereof must be affirmed.

*Affirmed.*