# Richmond.

## The Times-Dispatch Publishing Company, Inc., v. Charles Zoll.

### September 29, 1927.

1. Libel and Slander—*Statement Prima Facie Libelous—Case at Bar.*—A statement by defendant newspaper that plaintiff had been arrested with three others on a charge of storing ardent spirits and would "be tried the third Monday in January" was *prima facie* libelous, where it was conceded that plaintiff was never arrested, nor was there any ground in fact for the statement that he would be tried the third Monday in January.

2. Libel and Slander—*Evidence—Mitigation of Damages—Malice Charged in the Pleadings.*—Where in an action for libel malice is charged in the pleadings as a basis of recovery, the defendant can introduce testimony in mitigation of damages. Thus he may show that he did not originate the libel; from what source the information contained in the publication was received; that he acted in good faith and with diligence in his efforts to obtain reliable information; that he honestly believed the publication to be true, giving the circumstances and facts that justified the belief, indeed any settings and surroundings that will give to the jury a true picture of the situation at the time the offending article was published.

3. Libel and Slander—*Presumption of Damages where Libel is Actionable Per Se.*—The law presumes general damages where the libel is actionable *per se*.

4. Libel and Slander—*Damages—No Pecuniary Damage Shown—Amount for Jury—Case at Bar.*—In the instant case, an action for libel, the court in its instructions undertook to define both nominal and compensatory damages. The plaintiff failed to prove any actual pecuniary injury suffered by him. The jury found a verdict for plaintiff for $750.00.

   *Held:* That the verdict might be treated as for general damages which the law presumes where the libel is actionable *per se*, or as for nominal damages as defined in the instruction of the trial court.

5. Libel and Slander—*Damages—No Pecuniary Damage Shown—Amount for Jury.*—In an action for libel where the libel is actionable *per se* and no pecuniary injury is shown, the amount of damages is neces-

sarily arbitrary, and arrived at by the jury without precedent or standard of measurement. So is every case where the jury is authorized to award damages for insult, mortification, mental suffering, etc. Each case is determinable upon its own facts and circumstances, and the jury determines what will be just compensation, and may award substantial damages.

6. LIBEL AND SLANDER—*Evidence—Mitigation of Damages—Malice not Claimed.*—No evidence in mitigation of damages upon a plea of not guilty can be received where malice is not claimed and where the jury are instructed that no punitive damages can be considered in fixing the amount to which the plaintiff is entitled.

7. LIBEL AND SLANDER—*Privileged Communications—Reports of Criminal Proceedings.*—The publication of public records to which everyone has a right of access is privileged. While it has been held that the incorrectness of the record does not necessarily destroy the privilege, as a general rule, the privilege requires that the article be a fair and accurate account of transcript of the record; and if one published an extract from a public document, he would be responsible if he has not correctly extracted it, or if it has not been correctly copied.

8. LIBEL AND SLANDER—*Privileged Communications—Reports of Criminal Proceedings—Ex Parte Proceedings—Hearing.*—The rule that reports of criminal proceedings are privileged attaches even if the proceedings are preliminary or *ex parte* in their nature, if any judicial action has been had thereon. Where the proceedings are such as will result in a final decision being given, its report is privileged, although it is published before the final decision is given, but the very terms of the rule imply that there must be a hearing of some kind. In order that the *ex parte* nature of the proceedings may not destroy the privilege, there must be at least so much of a public investigation as is implied in a submission to the judicial mind with a view to judicial action.

9. LIBEL AND SLANDER—*Reports of Criminal Proceedings—Burden of Proof Where Information is Obtained from Source Other than the Record.*—A newspaper in publishing the proceedings of a trial where the information is gotten from a source other than the record itself must carry the burden of showing that the information published is the same as that disclosed by the record, and assume the risk of its correctness.

10. LIBEL AND SLANDER—*Reports of Criminal Proceedings—Report not Justified by the Record in the Case—Case at Bar.*—In the instant case, an action for libel, defendant newspaper published a statement to the effect that plaintiff had been arrested with three others on a charge of storing ardent spirits and would "be tried the third Monday in January." It appeared from the record that under a search warrant a barn of plaintiff was searched and liquor found,

and that plaintiff together with three others was summoned before another justice than the one issuing the search warrant, to testify as witnesses; that on the same date the justice investigating the case made the following endorsement on the warrant: "This case by request of the Commonwealth's attorney is continued," and that there the proceedings terminated. The officer's return stated that he arrested plaintiff, but in fact no arrest was made and the return was corrected.

*Held:* That this publication was not a fair and accurate statement of the proceedings and therefore was not privileged.

Error to a judgment of the Circuit Court of Fairfax county in an action of trespass on the case.    Judgment for plaintiff.    Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Pollard & Smith* and *F. D. Richardson*, for the plaintiff in error.

*Wilson M. Farr; Barbour, Keith, McCandlish & Garnett*, and *Charles Pickett*, for the defendant in error.

McLEMORE, J., delivered the opinion of the court.

Action of trespass on the case and verdict for the plaintiff in the court below, defendant brings error.

The parties will be hereafter referred to as they were designated in the court below.

On January 5, 1925, Virgil Williams, prohibition inspector for Virginia, had issued by A. C. Ritchie, a justice of the peace for the county of Fairfax, a search warrant authorizing him to search the barn in the town of Fairfax owned by the plaintiff, Charles Zoll, mayor of said town, proprietor of the "Tavern" and a justice of the county.

In this search several vessels were found containing

in the aggregate more than one gallon of ardent spirits, and the owner of the property, together with three others, were summoned before the justice to testify as witnesses on the 7th day of January, two days after the liquor was found. On the same date the justice investigating the case made the following endorsement on the warrant: "This case by request of the Commonwealth's attorney is continued. Given under my hand this 7th day of January, 1925. John T. Moling, J. P." No further action appears to have been taken on this warrant.

The return of the officer, Virgil Williams, states that he "executed the within warrant this 5th day of January, 1925, by searching the within stated premises, and by seizing the following described ardent spirits and other things therein found (and arresting the above named person found in possession thereof) and by posting a true copy of this warrant and the return hereon on the door of barn."

At some later date, apparently after the publication complained of, Williams, at the suggestion of the Commonwealth's attorney, corrected his return upon the warrant by erasing the words "and arresting the above named person found in possession thereof." No arrest was ever made and this correction of the return was in keeping with the facts.

On January the 5th the same day the liquor was found in the red barn of plaintiff, prohibition officer Williams on "daily report" form reported to the department in Richmond the supposed happenings in Fairfax in connection with the finding of the liquor, in which report it is stated under the head "arrest" the names Charles Zoll, Peyton Young, Clarke Jones and Frank Clarke. Among other things in the report is the following:

"The first named Charles Zoll is Mayor of town of Fairfax; also J. peace. There was a hearing· held on 7th. After the hearing it was continued at request of Commonwealth Attorney. They are all prominent men and were released on personal bond."

The daily report form also carries this question to be answered: "Disposition of case"—answer, "had hearing 7th continued to 17th." "When and where does grand jury meet?" Answer, "third Monday in January."

Said report along with others received at the office of Commissioner of Prohibition at Richmond was made accessible to the reporters of the newspapers covering that territory, and a representative of the Richmond Times-Dispatch saw the report and published on the 10th of January, 1925, the article complained of which is:

"Dry officers takes mayor of Fairfax.

"Arrested with three others on charge of storing ardent spirits.

"Charles Zoll, mayor of the town of Fairfax and justice of the peace; Peyton Young, Clarke Jones and Frank Clarke have been placed under arrest in Fairfax county by Virgil Williams, inspector for State Prohibition Department, on charge of possessing ardent spirits. They will be tried the third Monday in January."

On February 24, 1925, an action was brought against the defendant by Charles Zoll, and in due course a verdict returned for $750.00 and judgment entered thereon. To this action of the court in entering judgment as aforesaid the defendant excepted.

The first assignment of error deals with the exclusion of certain evidence of the defendant sought to be introduced with the view of showing the sequence of events that gave rise to the publication complained of.

The second assignment is based upon the failure of the court to instruct the jury that the publication was privileged.

[1] It is conceded by all parties that the publication in defendant's paper is incorrect and *prima facie* libelous; that plaintiff was never arrested, nor was there any ground in fact for stating "they will be tried the third Monday in January."

Assuming the defendant to be liable in damages for the publication, the real conflict arose over the evidence which the jury should hear in determining the amount to be assessed in their verdict as proper compensation.

The declaration in both the common law and statutory counts charges that defendant was actuated by malice in publishing the article complained of; that it published a certain "false, scandalous, malicious, and defamatory libel."

[2] Authorities are without number sustaining the position that defendant can introduce testimony in mitigation of damages where malice as a basis of recovery is charged in the pleadings. It may show that it did not originate the libel; from what source the information contained in the publication was received; that it acted in good faith and with diligence in its efforts to obtain reliable information; that it honestly believed the publication to be true, giving the circumstances and facts that justified the belief; indeed, any settings and surroundings that will give to the jury a true picture of the situation at the time the offending article was published. *Mopsikov v. Cook*, 122 Va. 579, 95 S. E. 426; *Norfolk Post Corp. v. Wright*, 140 Va. 742, 125 S. E. 656, 40 A. L. R. 579; Newell on Slander and Libel (4th ed.), sections 768–778, also 782; 37 C. J. 114 and cases cited, and 121; *Evening Post Co.*

v. *Hunter*, 18 Ky. Law 726, 38 S. W. 487; *Folwell* v. *Providence Journal Co.*, 19 R. I. 551, 37 Atl. 6; and *Palmer* v. *Mahin*, 120 Fed. 737, 57 C. C. A. 41.

Counsel for the plaintiff as well as the learned trial judge recognized the principles of law just adverted to, and during the progress of the trial plaintiff's counsel and the trial judge also stated that no punitive damages would be asked or allowed, and the jury were likewise instructed.

[3] Under the rule laid down by Sims, J., in the case of *Henry Myers & Co.* v. *Lewis*, 121 Va. 50, 92 S. E. 988, the law presumes general damages where the libel is actionable *per se*. Newell on Slander and Libel, sections 1018, 1020, 1024, and in the instant case the instructions given by the court at the instance of the plaintiff undertake to define both nominal and compensatory damages, using the following language:

"Nominal damages are such as the law awards to a plaintiff for a violation of any of his legal rights by the defendant.

"Compensatory damages are such as will compensate the plaintiff for actual injury suffered by him as a natural and proximate result of the defendant's act."

[4, 5] We think it clear from the record that the plaintiff failed to prove any actual pecuniary injury suffered by him, and, therefore, was not entitled to recover on that account. His legal rights were violated and for that wrong he was entitled to a verdict. The jury gave $750.00, which may be treated as general damages according to *Myers & Co.* v. *Lewis*, *supra*, or nominal damages as defined in the instruction given by the learned trial judge. This amount is necessarily arbitrary, and arrived at by the jury without precedent or standard of measurement. So is every case where the jury is authorized to award damages for insult, mortification, mental suffering, etc.

Each case is determinable upon its own facts, circumstances and surroundings. From these the jury gets its impressions, reaches and accord and renders its verdict. So it is, that in cases of this character the jury determines what will be just compensation, and may award substantial damages.

[6] Counsel for the publishing company urge with zeal and ability the necessity for presenting to the jury the many circumstances preceding the published account of the trial on the 10th of January, such as the issuing of a search warrant on the 5th; the public hearing on the 7th in the town of Fairfax, the continuance of the case; the general public discussion of the matter which followed, etc., that the jury might thereby be the better able to determine what part of the damages was caused by the publication on January 10th. And while there is not wanting authorities supporting the views thus presented (*Norfolk Post Corp. v. Wright, supra*), we think the great weight of authority including Virginia, adhere to the doctrine that no evidence in mitigation of damages upon a plea of not guilty can be received where malice is not claimed and where the jury are instructed (as in this case) that no punitive damages can be considered in fixing the amount to which the plaintiff is entitled. *Williams Printing Co. v. Saunders*, 113 Va. 156, 73 S. E. 472, Ann. Cas. 1913E, 693.

The second assignment of error is based on the refusal of the court to instruct the jury that the publication of the news item in the Times-Dispatch was privileged.

[7] "The publication of public records to which everyone has a right of access is privileged. While it has been held that the incorrectness of the record does not necessarily destroy the privilege, as a general rule,

the privilege requires that the article be a fair and accurate account of transcript of the record; and if one publishes an extract from a public document he is responsible if he has not correctly extracted it, or if it has not been correctly copied." 36 Corpus Juris, section 265½, page 1275.

[8] "The rule attaches to judicial proceedings even if preliminary or *ex parte* in their nature, if any judicial action has been had thereon. Where the proceedings are such as will result in a final decision being given, its report is privileged, although it is published before the final decision is given, but the very terms of the rule imply that there must be a hearing of some kind. In order that the *ex parte* nature of the proceedings may not destroy the privilege, there must be at least so much of a public investigation as is implied in a submission to the judicial mind with a view to judicial action." 36 Corpus Juris, section 267, page 1276.

"As a general rule the reports of criminal proceedings are privileged, even if preliminary or *ex parte* in their nature, if any judicial action has been had thereon." 36 Corpus Juris, section 268, page 1277.

There are numerous authorities to the same general effect, but we think the above fairly state the rule in this jurisdiction.

The policy of the law which, under certain circumstances, permits newspapers to publish court proceedings finds its justification in its beneficent influence upon those charged with the trial and conduct of litigation, when they know their official acts may be bared to public scrutiny and criticism. Newell on Slander and Libel (4th ed.), section 341.

[9] A newspaper in publishing the proceedings of a trial where the information is gotten from a source

other than the record itself, must carry the burden of showing that the information published is the same as that disclosed by the record, and assume the risk of its correctness. *Norfolk Post Corp.* v. *Wright, supra.*

[10] To be privileged the report as published in this case must have been an impartial and accurate account of what really occurred at the trial as shown by the warrant, the return of the prohibition officer, and the endorsement of the justice conducting the hearing, as they appeared on January 10, 1925. Newell on Slander and Libel (4th ed.), section 456.

So far as the record shows there has been no trial or investigation of the case against Charles Zoll. From an inspection of the warrant and the officer's return thereon it appears that it was issued on January 5, 1925, that on the same day the plaintiff, with three others, was arrested, the premises searched, and liquor found; that another justice on January 7th continued the case at the request of the Commonwealth's attorney, and there the proceedings terminated. Whatever may be said in justification of some of the statements, it is quite clear that nothing in this record justifies that part of the publication which says: "They will be tried the third Monday in January." This is not a fair and accurate statement taken from the warrant or from any other paper in connection with the justice court investigation; indeed, the proceedings of the court give no intimation of whether any hearing was had or not, and the publication to that extent at least was not privileged.

It is the opinion of the court, for the reasons stated, that no sufficient error was committed by the trial court to justify a reversal of the judgment and the same is affirmed.

*Affirmed.*