# Wytheville

THE NEWS LEADER COMPANY V. BESSIE KOCEN.

June 12, 1939.

Record No. 2042.

Present, All the Justices.

96

The opinion states the case.

*Stuart G. Christian, Brockenbrough Lamb* and *A. Hamilton Bryan,* for the plaintiff in error.

*Harry M. Herman,* for the defendant in error.

HUDGINS, J., delivered the opinion of the court.

This writ of error brings under review the proceedings in the trial of an action for libel and insulting words against the News Leader Company, which culminated in a judgment for $2,500 on the verdict for plaintiff.

The News Leader Company publishes, in the city of Richmond, the Richmond News Leader, a daily (except Sunday) newspaper which has a large circulation. The article upon which the action is based was published in the "Home Edition" of the News Leader on August 18, 1937, under the heading,

"Police Arrest One as Gambler,

"Charged with Promoting Cigarette Machine"

The body of the article, with the pertinent statements in italics, is as follows: "Richmond police, continuing their drive against cigarette or pin-ball machines and other gambling devices, arrested Douglas Schools, 18, of 614 North Twenty-third Street, on a warrant charging him with violating the State's anti-gambling laws. Officers Dalton and Brooks, who made the arrest, said Schools was promoting a

cigarette machine game. The machine was confiscated and Schools was released on bail, pending a hearing in Police Court tomorrow. Young Schools is the first person taken into custody for operating a gambling machine since Justice Folkes announced that the next conviction on this charge would draw a fine of $250 and costs. At the same time, Commonwealth's Attorney Haddon declared he would prosceute distributors of such machines, as well as proprietors of stores in which they were seized. In this instance, however, the distributor of the machine was not arrested, Police Chief R. B. Jordan explained, because the machine itself does not 'pay off.' The player receives extra packs of cigarettes, which are handed across the counter, when the machine registers certain numbers, he said.

*"Police also issued a warrant against Mrs. Bessie Kocen, of 2317 Floyd Avenue, charging her with operating a clearing house game.* For this offense, Justice Folkes recently has been dealing out fines of $100 and a sentence of one month in jail, in an effort to break up the 'numbers' racket by imposing severe penalties. *Mrs. Kocen furnished bail for her appearance in Police Court Friday."*

Defendant, in its grounds of defense, states:

"2. The circumstances of the publication and the sources of information upon which the defendant relied are as follows:

"On August 18, 1937, there appeared on the Case Book in the Police Court of the City of Richmond, Virginia, an entry to the effect that Mrs. Bessie Kocen had been charged with operating a certain game of chance commonly called 'clearing house,' and that she had furnished bail for her appearance in that Court on Friday, August 20, 1937. The address of the accused did not appear on said Case Book. One of the reporters of the defendant, on the morning of August 18, 1937, went to said Police Court and, upon examining said Case Book, made a note of the facts there shown about the said Mrs. Bessie Kocen, but before leaving said Court, he inadvertently failed to look at the criminal warrant against Mrs. Kocen upon which her address was

given as 1000 St. John Street, Richmond, Virginia. Said reporter, arriving at the office of the defendant, consulted the City Directory of the City of Richmond, Virginia, to ascertain the address of the accused and there finding listed a Mrs. Bessie Kocen, the plaintiff, whose address is 2317 Floyd Avenue, Richmond, Virginia, he erroneously used this as the address of the accused in the publication complained of. Said reporter, thinking the name of Kocen to be an unusual one, and assuming that there was only one Mrs. Bessie Kocen living in said City, did not, after finding therein the name of Mrs. Bessie Kocen, whose address is 2317 Floyd Avenue, search said City Directory further and, therefore, failed to see there listed another Mrs. Bessie Kocen, the accused, whose address as aforesaid is 1000 St. John Street.

"3. The defendant denies any malice on its part in making said publication and shows that the error which it made in giving the address of the accused as 2317 Floyd Avenue was an honest, unintentional mistake, and that with the exception of said error, the publication complained of is a true and accurate account of the charges against the said Mrs. Bessie Kocen of 1000 St. John Street.

"4. On the afternoon of August 18, 1937, the plaintiff telephoned the defendant and advised it of the error which had been made and asked for a correction thereof. The defendant, through said reporter, explained to the plaintiff how said error had occurred, apologized for having made the mistake, and assured the plaintiff that the defendant would print a correction. This the defendant did in a later edition of its newspaper that same day, and, in addition thereto, it also printed in its newspaper on the following day, that is, August 19, 1936, a blocked-off correction, under prominent headlines, as follows.

" 'WRONG NAME GIVEN IN COURT CASE.'

"Mrs. Bessie Kocen, of 2317 Floyd Avenue, was erroneously reported as having been summoned to appear in

Police Court to answer a charge of operating a 'clearing house' game. The person summoned was another Mrs. Bessie Kocen who lives at 1000 St. John Street."

The uncontradicted evidence fully establishes the material statements set forth in the grounds of defense. Even so, this evidence convicts the writer of the article of negligence, as the correct address of the woman charged with the crime was written on the warrant. Her name and address were also listed on the next line following the name of Mrs. Bessie Kocen, of 2317 Floyd Avenue, in the city directory consulted by the reporter.

■■ The record contains no evidence of actual malice or of a reckless disregard of plaintiff's rights. Hence, no question of punitive or exemplary damages is involved. The record does reveal a careless mistake which resulted in an innocent person being falsely charged with the commission of a criminal act. Under these facts plaintiff is entitled to recover. The vital question presented is the amount of that recovery.

■■ The larger aspect of this case presents two conflicting interests. On the one hand we have a newspaper, with a large circulation in the city of Richmond, engaged in publishing the fact that the authorities were making an extensive drive on a certain class of racketeers operating in the city of Richmond and elsewhere. During this drive numerous articles appeared in the paper relative to the activities of the police and the various parties who had been arrested and charged with some phase of this racketeering. The article in question was published as a part of the combined effort of the newspaper and the police to eliminate this form of law violation. Unfortunately and unintentionally, but by the carelessness of an agent of the newspaper, the correct name but the wrong address of one of the persons charged with a crime was given in the publication. It so happened that there lived in the city another Bessie Kocen, who is the sister-in-law of the Bessie Kocen arrested. One Bessie Kocen lived at 2317 Floyd Avenue and the other at 1000 St. John Street. The one living on 2317 Floyd Avenue

was not arrested, and hence her rights as a private citizen were unintentionally invaded by identifying her as one of the persons arrested and charged with a criminal offense. As this right of a citizen was violated by the negligence of defendant, she is entitled to vindication. The fact that defendant was engaged in publishing the proceedings of a criminal case, which is a matter of more or less public concern, does not relieve it of the duty of being fair and accurate in identifying persons charged with criminal offenses. However, in the vindication of these private rights, the defendant should not be made to pay more than a sum sufficient to afford a reasonable and fair compensation for the injury inflicted.

This leads to the questions of damages and mitigation of damages, which are involved in one form or other in each of the three assignments of error stated in the petition.

■ To ascertain what is a fair and reasonable compensation for such an injury, inflicted under the circumstances, is not easy. It has been repeatedly stated that there is no rule of law fixing the measure of damages, nor can it be reached by any process of computation. *Corr* v. *Lewis*, 94 Va. 24, 26 S. E. 385.

■ Chief Justice Campbell, in the recent case of *Kroger Grocery Co.* v. *Rosenbaum*, 171 Va. 158, 164, 198 S. E. 461, 463, quoted with approval the following statement made by Judge Buchanan in *Boyd* v. *Boyd*, 116 Va. 326, 82 S. E. 110, Ann. Cas. 1916D, 1173: "In such cases there is no rule of law fixing the measure of damages, nor can it be reached by any process of computation. Where that is the case, the general, if not the universal, rule in this State is, that the verdict of the jury will not be set aside unless it is so grossly excessive (or inadequate) as to indicate that the jury in rendering it were actuated by prejudice, passion or corruption, or that they have been misled by some mistaken view of the merits of the case. *Southern Ry. Co.* v. *Smith*, 107 Va. 553, 560, 59 S. E. 372, and cases cited; *Norfolk & W. Ry. Co.* v. *Shott*, 92 Va. 34, 47 (48), 22 S. E.

811; *C. & O. Ry. Co.* v. *Harris,* 103 Va. 635, 643, 49 S. E. 997."

When all the facts and circumstances of this case are considered, the verdict of the jury is unusually large. See *James* v. *Powell,* 154 Va. 96, 152 S. E. 539; *W. T. Grant Co.* v. *Owens,* 149 Va. 906, 141 S. E. 860; *Times-Dispatch Pub. Co.* v. *Zoll,* 148 Va. 850, 139 S. E. 505; *Norfolk Post Corp.* v. *Wright,* 140 Va. 735, 125 S. E. 656, 40 A. L. R. 579; and *Thorson* v. *Albert Lea Pub. Co.,* 190 Minn. 200, 251 N. W. 177, 90 A. L. R. 1169. This is true when this verdict is compared with many verdicts in cases in which the jury have been authorized to consider vindicative or punitive damages as an element of recovery. *Wright* v. *Cofield,* 146 Va. 637, 131 S. E. 787; *Ramsey* v. *Harrison,* 119 Va. 682, 89 S. E. 977; and *Harman* v. *Cundiff,* 82 Va. 239. It is also true that other juries, in cases where there was no evidence in mitigation but where there were aggravating circumstances in addition to the original insult and injury to plaintiff, have returned verdicts much larger than that now under consideration. A typical instance of this class of cases is *Kroger Grocery Co.* v. *Rosenbaum, supra.*

Before discussing the instructions, a brief summary of the evidence on the question of damages will be made. When plaintiff first read the publication she immediately telephoned the reporter who had written the article, and told him of the mistake made in the address of the Bessie Kocen arrested or summoned to police court. At the moment she appeared appeased or satisfied with his apology and promise to correct the mistake. Within an hour she telephoned the second time and, according to the testimony of the reporter, threatened an action for libel. He again apologized and promised to make the correction in the next publication. Plaintiff testified that within 3 or 4 days thereafter she determined to sue for damages, and within 8 days filed her notice of motion claiming to have been damaged in the sum of $25,000. She said that she was not satisfied with the apology, and that the reporter did not comply with his promise by publishing an apology and a correction on

the front page of the News Leader, "and that they should have given me a better write-up than they did." There was other evidence tending to show that plaintiff was mortified by people telephoning her about the winning number in gambling, and because it was mentioned in a derogatory manner to two of her children. She said: "I just kept crying and I was hysterical, just thinking about what people would think about me all the time; lost many sleepless nights; had such headaches from crying I had to take aspirin and often bothered my husband to try to do something for me." She declined to go to parties as she thought people were thinking about the insult to her. While the weight to be given this evidence was peculiarly a question for the jury, nevertheless it creates a strong suspicion that under the circumstances of this case plaintiff has made a deliberate attempt to exaggerate or magnify the amount of her damage.

The cases cited were decided under the doctrine stated in *Times-Dispatch Pub. Co.* v. *Zoll, supra* [148 Va. 850, 139 S. E. 505], thus: "No evidence in mitigation of damages upon a plea of not guilty can be received where malice is not claimed and where the jury are instructed (as in this case) that no punitive damages can be considered in fixing the amount to which the plaintiff is entitled."

In 1934 the general assembly changed this doctrine by enacting section 6240a of the Code of 1936: "In any civil action against the publisher, owner, editor, reporter or employee of any newspaper, magazine or periodical under section fifty-seven hundred and eighty-one of the Code of Virginia, or for libel or defamation, because of any article, statement or other matter contained in any such newspaper, magazine or periodical, the defendant, whether punitive damages be sought or not, may introduce in evidence in mitigation of general and punitive damages, or either, but not of actual pecuniary damages all the circumstances of the publication, including the source of the information, its character as affording reasonable ground of reliance, any prior publication elsewhere of similar purport, the lack of

negligence or malice on the part of the defendant, the good faith of the defendant in such publication; and that apology or retraction, if any, was made with reasonable promptness and fairness; provided that the defendant may introduce in evidence only such circumstances and to the extent set forth in his or its grounds of defense which shall be filed in writing at least ten days before trial."

█ Defendant complied with the provisions of this statute by filing its grounds of defense within the time stated. Notwithstanding the fact that the allegations set forth in the grounds of defense were fully supported by the evidence introduced for the purpose of mitigating general or compensatory damages, the jury returned a large verdict. We would not, perhaps, be justified, under the rules applicable to the consideration of the question of excessive verdicts, in disturbing the verdict on the sole ground that it is excessive. However, the size of the verdict is an additional incentive for us to examine the instructions with most minute care to ascertain whether or not they were couched in language which may have been calculated to mislead the jury or to give them some misconception of the merits of the case.

The court gave four instructions on damages, and refused to give an instruction on nominal damages requested by defendant. Defendant concentrates its attack upon Instruction No. 3, given over its objection, and set forth below with the objectionable part italicized: "The court instructs the jury that for the plaintiff Bessie Kocen to recover *substantial compensatory damages,* actual malice (that is, a personal enmity or ill will on the part of the defendant) need not be shown. No privilege existing on the part of the defendant newspaper to publish the charges unless the same were in fact true, and no allegation of their truth being plead, they are conclusively presumed to be false, and the court therefore tells the jury that their publication was not privileged.

"The court further instructs the jury that a charge of operating a certain game of chance commonly called 'clearing-house' charges the plaintiff, Bessie Kocen, with the

commission of a crime, and is libelous *per se,* that is from their very nature and without further proof thereof by the plaintiff, and that malice is therefore implied from the publication alone, and it is not necessary for the plaintiff, Bessie Kocen, to prove either actual or pecuniary loss in order to recover therefor *substantial compensatory damages,* measured as set out in Instruction No. 5."

The court, in giving this instruction and in the course of its opinion, seemed under the erroneous impression that plaintiff, as a matter of law, was entitled to recover substantial damages. This may have been, and perhaps was, the doctrine prior to the adoption of the act of 1934, heretofore quoted. By the express mandate of that act, however, certain evidence in mitigation, and not theretofore admissible where punitive damages were not claimed, was made admissible, and was designed to mitigate general damages to which a plaintiff theretofore had been entitled. The jury might have determined that the evidence introduced under the provisions of this act eliminated all general or compensatory damages not "actual pecuniary," and thus allowed plaintiff only nominal damages. The weight to be given the evidence introduced in mitigation was peculiarly the province of the jury, and not of the court.

Instruction No. 3 is objectionable for another reason; namely, that the expression "substantial compensatory damages," used twice in the instruction, is inaccurate, and tends to mislead. Its use is well calculated to impress upon the jury the belief that the plaintiff was entitled to a large verdict, notwithstanding the fact that there was material and pertinent evidence to be weighed by them in mitigation of the amount of compensatory damages, if any, to be awarded. The jury should have been restricted by the instructions to the consideration of the principles constituting nominal and compensatory damages without any suggestion as to whether the compensatory damages should be large or small.

Nominal damages "are those recoverable where a legal right is to be vindicated against an invasion that has produced no actual present loss of any kind or where, from

the nature of the case, some injury has been done the amount of which the proofs fail to show. The law infers some damage from the * * * invasion of a right; and if no evidence is given of any particular amount of loss, it declares the right by awarding what it terms 'nominal damages.'

\* \* \* \* \* \* \*

"Actual or compensatory damages, the terms being synonymous, are damages in satisfaction of, or in recompense for, loss or injury sustained. Either term covers all loss recoverable as a matter of right and includes all damages other than punitive or exemplary damages. It is clear, therefore, that actual or compensatory damages are not dependent upon proof of malice." 15 Am. Jur. 390, 397.

Obviously it would be error to use the expression "slight actual damages" or "substantial actual damages." As compensatory damages include all damages other than punitive or exemplary, the use of the word "substantial" in the instruction unduly emphasizes the amount of damages which may be awarded. Any modifying word or phrase of the term "actual or compensatory damages" does not clarify the meaning intended to be conveyed and should be avoided.

The expression "substantial compensatory damages" has been used in two Virginia cases. It first appeared in *Jordan* v. *Melville Shoe Corp.* (March, 1928), 150 Va. 101, 105, 142 S. E. 387, 388. The following excerpt shows the context in which it was read: "Even if plaintiff is not entitled to punitive damages he is entitled to compensatory damages without any evidence on his behalf showing actual or pecuniary loss, provided a corporation is liable in damages at all under section 5781 of the Code, a question which will be disposed of later.

"So far as the present question is concerned it is perfectly well settled that in insulting language cases no actual damages have to be proved in order to recover *substantial compensatory damages*. The law implies damages from the speaking of insulting words." (Italics supplied.)

It clearly appears that in the above discussion the court was drawing a distinction between punitive and compensatory damages. Compensatory damages may or may not be large, but whether such damages are large or small is, in most cases wherein unliquidated damages are sought, a question for the jury to determine without suggestions from the court in the instructions.

Later (March, 1930), the expression was incorporated in an instruction in *James* v. *Powell,* 154 Va. 96, 116, 152 S. E. 539. No objection was made to the phraseology of the *instruction.* The objection was to the application of the principle stated to the evidence in the case. This court, in a very short statement, held that the principle was applicable to the facts, and overruled the objection to the instruction. No attack was made upon the size of the verdict as it was only $1,000. So, even if the phraseology of the instruction had been called to the attention of the court, doubtless it would have been held harmless error.

The instructions are usually prepared by attorneys, but, when given to the jury by the trial judge, they are the instructions of the court and contain the principles of law by which the jury are to be guided. It is to be remembered that the instructions given by the trial court *precede* the verdict, and that the comment and discussion of the instructions by the appellate court are made *after* the verdict has been returned. For this and other reasons the statement made by Judge Burks, in *Abernathy* v. *Emporia Manufacturing Co.,* 122 Va. 406, 413, 95 S. E. 418, 420, is apropos: "Language used by an appellate court in deciding a case may be entirely proper and correctly state the law, and yet be wholly unsuitable as an instruction to the jury, even where the facts of the two cases are similar. The appellate judge frequently uses argumentative language and also freely expresses his opinion upon the facts of the cases, neither of which would be appropriate in an instruction to the jury. So that the mere fact that certain language has been used by the judge of the appellate court in render-

ing an opinion is not of itself sufficient to justify the use of the same language by a trial court in its instruction to the jury."

The same idea was expressed by Mr. Justice Browning, in *Snyder* v. *Fatherly*, 158 Va. 335, 353, 163 S. E. 358, 365, in this language: "We conceive that there may be a legal proposition, perfectly sound as an abstract statement of law, but which would not be favored as an instruction to a jury for the reason that, in its form, unrelated to the evidence in the particular case, and unmodified to suit or fit the evidence, it might mislead the jury and thus defeat its legitimate purpose."

The experienced and able trial judge, who presided in this trial, was perhaps misled by some expressions of this court in former opinions to approve the instruction as drawn by plaintiff's counsel. However, the instruction, with its objectionable phraseology, may have, and doubtless did unduly impress the jury as to the amount of the award to which plaintiff was entitled; at least it laid undue emphasis upon the size of the award in behalf of plaintiff while there was no corresponding instruction on the question of nominal damages to which defendant was entitled. The jury had a right, under the evidence in this case, to award plaintiff substantial damages to be reduced by the weight the jury may have determined to give the evidence introduced in mitigation. It is equally true that the jury might, under this evidence, award nominal damages only. The reversible error lies in the fact that the instructions emphasized the right of the plaintiff to recover substantial damages without any instruction laying equal emphasis on the fact that the jury might return a verdict for nominal damages.

While we think that the jury should have been instructed on the question of nominal damages, the court was correct in refusing to give, as offered, the following instruction: "The court instructs the jury that, in this case, if you believe from all of the facts shown by the evidence that the

plaintiff is entitled to recover, you may award her only compensatory or nominal damages;

"Nominal damages are such as the law awards for violation of a legal right;

"Compensatory damages are such as will compensate the plaintiff for actual injuries suffered by her as the natural and proximate result of the defendant's acts.

"And in this connection, the court tells you that, if you believe from the evidence that there is want of proof of actual damage to the plaintiff resulting proximately from the defendant's acts, you may award her nominal damages only."

The vice in this instruction is in the last paragraph. The general, and practically the universal rule is that where the libel or the words uttered are actionable *per se,* it is not necessary in order for plaintiff to recover to prove actual or pecuniary loss, as the law presumes general damages in such cases. *Williams Printing Co.* v. *Saunders,* 113 Va. 156, 73 S. E. 472, Ann. Cas. 1913E, 693; *Henry Myers & Co.* v. *Lewis,* 121 Va. 50, 92 S. E. 988; *W. T. Grant Co.* v. *Owens,* 149 Va. 906, 141 S. E. 860; *Boyd* v. *Boyd, supra; Times-Dispatch Pub. Co.* v. *Zoll, supra;* and Odgers on Libel and Slander, sec. 289.

The grounds of defense and the uncontradicted evidence convict defendant of negligence as a matter of law. This being true, the only open question in the case is whether plaintiff is entitled to recover nominal or compensatory damages. If the jury reaches the conclusion that she is entitled to recover compensatory or general damages, then it must ascertain how much, if any, the compensatory damages should be diminished by reason of the mitigating circumstances set forth in the grounds of defense and the evidence introduced in support thereof.

For the reasons stated, we reverse the judgment, set aside the verdict, and remand the case for a new trial.

*Reversed and remanded.*

HOLT, J., dissenting.

The publication under review charges Mrs. Kocen with an offense shot through with moral turpitude and is punishable both by fine and imprisonment. For these reasons, it is actionable *per se.*

How was she affected?

Mr. Feldman talked with her on the afternoon of the publication and tells us that she was crying. She said:

"I was hysterical, just thinking about what people would think about me all the time; lost many sleepless nights; had such headaches from crying I had to take aspirin and often bothered my husband to try to do something for me."

In reply to an invitation from her husband, "Come on and go out," she answered: " 'I don't feel like going,' and it was because I didn't feel like being questioned about it and I didn't answer the phone because I was tired of defending myself."

In short, she claims to have been humiliated and hysterical.

These statements may be colored, but they were accepted by the jury.

Moreover, it is true that all do not react alike to libels and slanders. What one would forget might prey upon the mind of another, and for this, among other reasons, we have often said, no rule of universal or even of general application can be written.

With deference it is submitted that challenged instruction No. 3 told the jury this and no more: It told them that in order to recover substantial compensatory damages actual malice need not be shown; it told them that the publication was libelous *per se,* that malice in law was therefore implied, and that the plaintiff, in order to recover substantial compensatory damages, need not prove actual or pecuniary loss.

It is important that we bear in mind the errors assigned when this instruction was given.

The trial court was entitled to all the aid that can be tendered here. New errors cannot be assigned. We hear the case upon appeal and not *de novo*. *Arrière pensée* has no proper place in a trial court. With this in mind counsel for the defendant has told us in unmistakable terms just what, in his opinion, the trouble was—certainly what it was then thought to be.

"Mr. Christian: We do not feel in this case the plaintiff has shown any substantial damages which can be compensated for under the Zoll decision and, therefore, we feel that the instruction should be limited to nominal damages and for that reason instruction No. 3 is faulty.

"Mr. Bryan: I think it is unnecessary to instruct the jury that by saying Mrs. Bessie Kocen operated a game commonly called clearing-house those words were libelous *per se;* I think you can eliminate all that."

He contended that the plaintiff was entitled only to nominal damages and not to substantial damages. This is the sharp issue here made, and to it we should direct our attention. It is easy to set up straw men, and it is easy to destroy them. At the best they do but darken counsel.

"Substantial and nominal," as antonyms, have come to be a part of the livery of the law of damages generally and have been applied times without number where redress for libel and slander was sought.

As defining "substantial," we are cited to these definitions in Webster's New International Dictionary, "considerable in amount, value, or the like. Large, as substantial gain." The same authority tells us that "damages are either substantial or nominal, according to whether there has been actual or merely nominal loss." This definition is taken from the Century Dictionary: "Nominal damages, a trifling sum such as six cents, awarded to vindicate a plaintiff's right when no serious injury has been suffered in contradistinction to substantial damages."

It is properly conceded that this was the law prior to an amendment of our Code, section 6240a, approved March

29, 1934; Session Acts, 1934, ch. 305, p. 495. For those who still doubt, these authorities may be helpful.

"It is generally held that the plaintiff is not required to show actual damage in order to entitled him to substantial damages. He is not limited to the recovery of mere nominal damages." 37 C. J. 115.

In *Sweeney* v. *Baker,* 13 W. Va. 158, 31 Am. Rep. 757, referred to by Judge Keith in the *Williams Printing Company Case, infra,* as a storehouse of learning, Green P., said:

"In very few cases has it been suggested, that, when the libelous allegations have been proven, or admitted to have been published by the defendant without justifiable excuse, it was incumbent on him, before he could ask a verdict for substantial damages, to prove by direct testimony such damages. When such suggestion has been made, as it has been in this case by counsel, it has always been promptly disposed of by deciding that in such a case no actual damages need be proven, to entitle a plaintiff to recover substantial damages, such damages as, on the facts proven, the jury believe he is entitled to recover."

This was said in discussing the right to recover for mental suffering and annoyance and finds repeated support in our own decisions.

A leading case on this subject in Virginia is *Williams Printing Co.* v. *Saunders,* 113 Va. 156, 73 S. E. 472, Ann. Cas. 1913E, 693. There Keith, P., said:

"The words alleged and proved to have been used by the defendant must have been injurious to the plaintiff's reputation, and are, therefore, actionable *per se;* and the plaintiff may recover a verdict for substantial damages without giving any evidence of pecuniary loss. Odgers on Libel and Slander, sec. 289."

In *Boyd* v. *Boyd,* 116 Va. 326, 82 S. E. 110, Ann. Cas. 1916D, 1173, Buchanan, J., said:

"Neither was it necessary for the plaintiff to prove actual pecuniary loss resulting from the utterance of the insulting words in order that the jury might give punitive damages. The law presumes that damages result from the utterance

of insulting words, made actionable by our statute, just as it does where the words uttered are actionable *per se;* and it is not necessary in either case, in order to recover, to prove actual or pecuniary loss."

Plainly if punitive damages may be recovered, substantial damages may be also.

To the same effect is *Henry Myers & Co.* v. *Lewis,* 121 Va. 50, 92 S. E. 988. Sims, J., said:

"The libel alleged in both counts of the declaration in the instant case was actionable *per se.* The plaintiff, therefore, was entitled to recover substantial, and even punitive damages, without any proof of particular instances of special damage. This is because the law presumes general damages where the libel is actionable *per se.* Newell on L. & S., p. 1043, sec. 1018; Id., p. 1047, secs. 1020, 1024."

See also, *Hines* v. *Gravins,* 136 Va. 313, 112 S. E. 869, 118 S. E. 114, in which it was said that punitive damages could be recovered under the provisions of Code, section 5781.

In *Jordan* v. *Melville Shoe Corp.,* 150 Va. 101, 142 S. E. 387, it was said that for insulting words "substantial compensatory damages" might be recovered although there be no proof of actual damages.

Since 1849, actions for insulting words have been treated as actions for libel or slander whenever the publication is actionable *per se.*

Subject to two exceptions, no demurrer will lie and no publication is necessary. In all other respects, an action under the statute is placed on all fours with an action or declaration at common law. *W. T. Grant Co.* v. *Owens,* 149 Va. 906, 141 S. E. 860.

In *James* v. *Powell,* 154 Va. 96, 152 S. E. 539, it appears that a newspaper in error charged one with a felony. There was no actual malice; all that was done was done in good faith and in the routine of a day's work. Instructions in that case cover this like a confession of judgment. But we are told that the objection now made was not then insisted upon. It was a case which attracted public attention and

was fought with vigor by able counsel. The reason therefor probably is that they thought it was without merit.

In *Snyder* v. *Fatherly,* 158 Va. 335, 163 S. E. 358, Judge Browning quotes with approval from the *Williams Printing Company Case, supra,* to the effect that substantial damages may be recovered.

We are told, however, that there is now no virtue in this avalanche of authorities in that they have been superseded by said Code, section 6240a.

As I see it, this statute has no bearing on this case. The effect is only to add other possible mitigating circumstances to the class of mitigating circumstances enumerated in and permitted effect by the former statute, Code, section 6240, which comes down from the Code of 1849, chapter 176, section 44. The act of 1934 permitted in mitigation evidence of an apology, just as Code, section 6240 did, and to the statute then in effect added other things which might be shown in mitigation also. One who is entitled to substantial damages, notwithstanding one mitigating circumstance, may still be entitled to it though two be shown. Not only is all of this true but when the court told the jury that they might give substantial damages, it told them to look at instruction No. 5. There is set out in detail those things which they should properly consider in mitigation.

The court in this case has, without more, said that it should be reversed and remanded,—in the vernacular, it is sent back wide open. Should there be another trial, it is possible that the jury, under the authority thus conferred, might find for the defendant, and this notwithstanding the fact that it, throughout the progress of this litigation, has admitted some liability. The only proper question for consideration upon a retrial is the amount of the recovery, and it should be remanded for that purpose only. Code, section 6365.

I think that the amount of this judgment is excessive, possibly in part caused by the failure of the defendant to apologize.

CAMPBELL, C. J., and GREGORY, J., concur in this dissent.