# Richmond.

## RORER A. JAMES, JR. v. ALLEN H. POWELL.

March 13, 1930.

Absent, Hudgins, Gregory and Browning, J J.

The opinion states the case.

*Harris, Harvey & Brown,* for the plaintiff in error.

*B. A. Davis, Jr.,* and *Horace M. Fox,* for the defendant in error.

HOLT, J., delivered the opinion of the court.

This is a fifteen day motion for judgment charging libel at common law and the use of insulting words against the statute made. There was a judgment for $1,100.00, which is now before us on a writ of error. Mr. James lives in Danville and owns and publishes two newspapers in that city, the *"Danville Register"* and the *"Danville Bee."* Mr. Powell lives in Franklin county. For convenience the terms "plaintiff" and "defendant" will be used as they were in the trial count.

Coley T. Godfrey was killed in Franklin county on November 13, 1927. On the same day a warrant on complaint was issued by a justice charging A. H. Powell and Ben F. Perdue with that homicide. They appeared before the justice, were arraigned, waived a preliminary hearing, were sent on to the grand jury, but were admitted to bail. They were indicted by a Franklin county grand jury on November 14, 1927.

On February 10, 1928, Perdue was tried and aquitted. Thereupon, at the suggestion of the trial judge, and with the consent of the attorney for the Commonwealth, a verdict of not guilty was likewise returned as to Powell.

This account of that incident was sent or phoned to the *"Danville Bee"* and published by it on November 18, 1927:

"Special to the Bee. Rocky Mount, Virginia, November 18th.—An unusual situation developed here today in regard to the murder of Coley T. Godfrey, whose body was found near here several days ago, and as result of which Ben F. Perdue and A. H. Powell (meaning the said plaintiff), State prohibition agents, are charged with first degree murder and robbery.

"Considerable feeling is apparent over the shooting. While Godfrey was not known here, the evidence in the hands of John Lee, Commonwealth's attorney of the county, tending to show a brutal murder for the purpose of robbery, and evidence to exchange the circumstances, making it appear that Godfrey attacked the officers, and that they shot in self-defense, has come as a startling revelation in methods of prohibition enforcement."

On February 11, 1928, and immediately following the acquittal, this publication appeared in the *Register:*

"B. F. Perdue, former Franklin county officer, charged with murder of Coley Godfrey, Roanoke picture frame agent, on November 3rd, was found 'not guilty' by a jury in the Franklin county court here at 6:15 o'clock this afternoon, after twenty-five minutes of deliberation. The verdict of acquittal automatically clears A. H. Powell, jointly charged with the killing. Judge Dillard ruled that as the evidence in both cases was identical, it would not be necessary to try

Powell. H. D. Dillard and H. N. Dillard represented the defendants, while J. P. Lee conducted the State's case. The Commonwealth contended that Godfrey was shot with robbery as the motive, the defense contending that Godfrey robbed Perdue, and that it was later in attempting to arrest Godfrey on Blackwater Bridge that Powell, who had been deputized by Perdue, a former police officer, shot Godfrey, the victim dying while being brought to town in a Ford car."

On February 20, 1928, Mr. Powell, who thought that he had been stung by this *Danville Bee*, came to Danville with his counsel, Mr. Dillard, to interview Mr. James, and on February 21, 1928, this statement appeared in the *Bee*:

### "THEFT NEVER ENTERED INTO POWELL CASE.

"Franklin Man and Ben Perdue Won Prompt Acquittal.

"Herbert Dillard, attorney of Franklin county, and Allen H. Powell, came to Danville yesterday and issued a formal statement bearing on the recent acquittal of Ben F. Perdue and of Mr. Powell at Rocky Mount early this month on charges of murder. Perdue was acquitted by a jury in twenty minutes' time and the State's case was considered by Commonwealth's attorney, J. F. Lee, as so lacking in convicting evidence that instead of entering a *nolle prosequi* in Powell's case he asked that a not guilty verdict be entered. This was done, giving both men complete clearance.

"Messrs. Dillard and Powell took exception to the statements appearing in this paper that the State in pressing the charges against Powell and Perdue claimed robbery as the motive of the murder. 'There was at

no time any suggestion that robbery was the motive and at no time has there ever been any intimation of such a charge,' Mr. Dillard says."

Notice of motion for judgment was filed on March 22, 1928, and on March 24, 1928, this supplemental statement appeared in the *Bee*:

"POWELL AND PERDUE FREE FROM BLAME

"Retraction for Injustice Done Franklin County Men.

"It has been brought to the attention of the publisher of the Bee that in a publication of November 18th, a publication of February 4th and a publication of February 9th, an unintentional injustice was done Messrs. A. H. Powell and B. F. Perdue, of Franklin county, Virginia.

"On November 14th, the two gentlemen in question were indicted in the Circuit Court of Franklin county for the murder of Coley Godfrey. It developed at the trial of this indictment in February that Godfrey had been killed during an attempt upon the part of Powell and Perdue to arrest him upon the charge of robbing Perdue. In some unaccountable way the information as it reached the Bee was confused in transmission and statements were published which constituted a reflection on Messrs. Powell and Perdue.

"It is the desire of this paper to make a public retraction and to correct the injustice. It wishes to vouch for the fact that at no time was there any charge made against Messrs. Powell and Perdue that they were guilty of any dishonest conduct of any character. The sole contention of the Commonwealth in its prosecution against them was that they had perhaps attempted an arrest without having the authority so to do and in

that attempt had used more force than it was necessary for their purpose.''

There is some conflict in evidence as to what occurred on the occasion of the visit of Mr. Powell and Mr. Dillard to ·Danville on February 20, 1928. For the plaintiff in error it is said that the statement of February 21, 1928, was presented to Powell and his counsel and declared by them to be entirely satisfactory.· Mr. Dillard said:

"I do not recall having seen any written statements or dictating anything, either one. I knew all of the gentlemen, I knew that they were high toned, honest gentlemen, and I did not have to introduce myself because I knew them and I introduced Mr. Powell and I told them what my business was and each one was as nice as they could be and showed every interest and desire to correct any mistake that had· been made, etc. Mr. Tetley, I think, asked me to prepare something in writing that would refute what had been said in a former paper. At that time I had not seen the obnoxious article complained of by Mr.· Powell, and I was not sufficiently familiar with the newspaper report to prepare a statement and I told Mr. Tetley that I preferred them to do it, and my recollection is at least by word of mouth that all three of these gentlemen stated that an apology would be prepared and that they would publish it and send me a copy of the paper, and I did not see a written statement from anybody, in fact, I don't think any statement was written while I was there.''

He also said:

"I do not remember distinctly telling these gentlemen that the jury was out a very short time and these gentlemen were exonerated and were not guilty of any charge whatsoever, and there wasn't a suggestion in

any evidence of robbery or larceny or anything of the kind. I remember telling all of those gentlemen that."

This statement is sustained by Mr. Powell's testimony. There was a verdict for the plaintiff confirmed by the trial court and so we must accept their version of what occurred on that occassion, the substance of which is that the apology was prepared by Mr. Tetley, a reporter for the *Bee*, and was not submitted to or read to either Mr. Powell or his counsel, nor was any copy of a paper containing this apology sent to them, though promised.

Vindictive damages are not asked for but compensation only.

The *Register* is a morning paper of general circulation in Franklin and other counties tributary to Danville. The *Bee* is an afternoon paper and publishes what is known as the "First Edition" and later the "Home Edition." The offending article appeared in the "Home Edition" but not in the "First Edition." The "First Edition" is sent to but one subscriber in Franklin county and no copy of the "Home Edition" is sent directly there.

Motion for judgment was filed on March 22, 1928, and notice was there given that the matter would be taken up on April 7th. From an order of April 7th, it appears that the parties appeared by counsel; by consent the plaintiff then filed an amended notice and the defendant was given until April 16th to answer, and by like consent the case was continued until June 20th. Another order recites that on this day the defendant appeared, pleaded the general issue and filed his grounds of defense, in which it is said that the publication complained of was a newspaper report of judicial proceedings, published in good faith, and for that reason privileged. And on defendant's motion

he was allowed to amend his pleas as to counts three and four and to show in mitigation of damages an apology, and the case, at the cost of the defendant, was continued until July 17, 1928. On July 17th, he tendered a plea in abatement which stated that the supposed cause of action did not arise in the county of Franklin but in the city of Danville and that when he was served with notice of the motion he did not reside in Franklin county but in the county of Pittsylvania.

At the same time a demurrer to the third and fourth counts was filed. That demurrer was overruled, and this is assigned as error.

The demurrer to the fourth count is not insisted upon, but that to the third is. It deals with the publication of February 11, 1928. In it the defendant contends that this publication appearing in the *Register* referred not to Powell but to Perdue only. He makes the further general statement to the effect that it is in no way actionable at common law.

"It is not necessary to make a writing libelous that the imputations should be made in the form of positive assertion. It is equally so if they are expressed in the form of insinuation, provided the meaning is plain." *Adams* v. *Lawson*, 17 Gratt. (58 Va.) 250, 94 Am. Dec. 455.

This article states that Powell and Perdue were jointly indicted for the murder of Godfrey; that Perdue was first tried, and that the Commonwealth contended that Godfrey was shot with robbery as the motive. The wayfaring man would readily infer that these two men were charged with having murdered Godfrey that they might rob him and that it was a joint enterprise. Such a charge states a cause of action. To say that a man committed a felony which

he did not commit, is a libel, and this is true even though he had, in fact, committed another felony of the same general character. *Norfolk Post Corp.* v. *Wright*, 140 Va. 735, 125 S. E. 656, 40 A. L. R. 579.

It is not a matter of first importance. The case turns upon the publication in the *Bee* and in all human probability the results would not have been changed had the *Register* never been mentioned.

No case should be reversed "where it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached." Code, section 6331.

Next it is said that the trial court erred in rejecting the plea in abatement.

Section 6046 of the Code, which deals with the fifteen day motion for judgment, in part declares:

"No plea in abatement under this section shall be received after the defendant has demurred, pleaded in bar, or filed such statement of his grounds of defense."

In section 6105 it is said:

"Where the declaration or bill shows on its face proper matter for the jurisdiction of the court no exception for want of such jurisdiction shall be allowed unless it be taken by plea in abatement. No such plea or any other plea in abatement shall be received after the defendant has demurred, pleaded in bar, or answered to the declaration or bill, nor after the rules next succeeding the rules at which the declaration or bill is filed."

Defendant relies upon section 6104 of the Code in which general provision is made for pleadings and amendments in furtherance of substantial justice, but it is entirely plain that there was no purpose here to do away with those express limitations provided for in the succeeding section.

The defendant had appeared; he had pleaded in bar and had filed his grounds of defense and so had precluded himself from questioning the jurisdiction of the court. Actions for libel are personal and transitory. *Burks' Pl. & Pr.*, chapter 7. Under section 5890 of the Code, circuit courts have original general jurisdiction in all such actions at law. It is true that section 6049 of the Code gives to a defendant the privilege of having his case heard in a particular county or city but to avail himself of this privilege he must set up his right at the time and in the manner provided for by statute and if he fails to do so he cannot afterwards be heard to complain in any case in which the court had general jurisdiction. Circuit courts in transitory personal action have territorial jurisdiction co-extensive with the State.

*Moore* v. *Norfolk & W. Ry. Co.*, 124 Va. 628, 98 S. E. 635, 636, was an action for personal injuries, suffered in Lynchburg, but action itself was brought in Campbell county. There, as here, objection was made to the venue of the action and was rejected because it came too late. The court in discussing the statutes noted, said:

"They concern only the procedure of the courts touching the place of trial, or the venue of actions at law or of suits in equity. They confer merely a privilege upon the defendant to have the action or suit against him in such a case heard and determined in the local courts therein specified. But it is a privilege which may be waived, and which, if about to be denied, must, in Virginia, be claimed by plea in abatement filed in pursuance of section 3260 [now section 6105] of the Code aforesaid; otherwise it will be lost, if the court in which the action or suit is brought has general jurisdiction of such an action or suit and has the subject matter and the proper parties, plaintiff and defendant, before it."

The court in that case held:

"Where the proper parties are before a circuit court, then by virtue of the statute (section 3058 of the Code of 1904 [now Code, section 5890]) and the common law rule on the subject, its territorial jurisdiction over persons and property is co-extensive with the bounds of the whole State, except as limited by the venue statutes, sections 3214 and 3215 [now sections 6049 and 6050] Code of 1904; and but for such venue statutes, if a party defendant be once gotten before such court, in a litigation over a subject matter of which the court has general jurisdiction and which subject matter is actually before the court by proper pleading and otherwise, such party would have no privilege of demanding that the trial should be had in any other court of the State, it matters not where the cause of action may have arisen or where else in the State the defendant may reside. And since the defendant owes to the statute law the venue privileges given by sections 3214 and 3215, Code of 1904 [now sections 6049 and 6050, Code of 1919] of limiting the said broad territorial jurisdiction of the court aforesaid, the statute law may attach a condition to the enjoyment of such privileges; and section 3260, Code of 1904 [now section 6105, Code of 1919], has attached a condition thereto, namely, that such privilege must be claimed by plea in abatement." Headnote No. 4.

In *Morgan* v. *Pennsylvania R. R. Co.*, 148 Va. 272, 138 S. E. 566, 567, the court said:

"Under Code, section 5890, the circuit courts have 'original and general jurisdiction of all cases in chancery and civil cases at law, * * *'.

"This is 'potential' jurisdiction, which, after valid service of process on the parties, gives the court 'active' jurisdiction and empowers it to hear the case and enter

a valid judgment therein. *Lile's Eq. Pl. & Pr.* (2nd ed.) sections 8-15; *Southern, etc., Co.* v. *Massaponax, etc., Corp.*, 145 Va. 323, 133 S. E. 812.

"Section 6049 does not confer jurisdiction on the court, but simply fixes the venue by giving the defendant the privilege of having his case heard in a particular county or city; and this privilege may be waived by him. He must claim it, within the time and in the manner prescribed by section 6105, *supra,* or it will be lost, if the court has general jurisdiction of such actions and has the subject matter and proper parties before it." *Burks' Pl. & Pr.*, 250, 251, 262. Many other Virginia cases to the same effect might be cited but these suffice.

 Defendant contends that he could not file this plea sooner because he could find no copy of the particular edition of his paper which contained the publication complained of. Had he written a libelous letter he would not be heard to say in support of such a claim that he had been able to find no copy of the letter and did not remember having written it. After all he was deprived of no substantive right and was in fact fully heard upon the merits of his case by a court to which he had been summoned and in which he appeared without objection. Plainly this dilatory plea came too late.

Although not in the order of its assignment, we will next consider the action of the trial judge in refusing to set aside the verdict and to grant a new trial.

 Godfrey had been killed and for this crime Perdue and Powell had been jointly indicted. In the publication it is said that they were there charged with first degree murder and robbery, and that the evidence in the hands of the attorney for the Commonwealth tended to show a brutal murder for the purpose of

robbery. They had been jointly indicted for murder but were not charged with "first degree murder and robbery," and there was no evidence in the hands of the Commonwealth's attorney tending to establish such a fact. Had the indictment contained such a charge it would have been a court proceeding and privileged and might have been published with impunity. *Penick* v. *Ratcliffe*, 149 Va. 618, 140 S. E. 664.

In *Times-Dispatch Pub. Co.* v. *Zoll*, 148 Va. 850, 139 S. E. 505, 507, Judge McLemore said:

"A newspaper in publishing the proceedings of a trial where the information is gotten from a source other than the record itself, must carry the burden of showing that the information published is the same as that disclosed by the record, and assume the risk of its correctness. *Norfolk Post Corp.* v. *Wright, supra.*

"To be privileged the report as published in this case must have been an impartial and accurate account of what really occurred at the trial as shown by the warrant, the return of the prohibition officer, and the endorsement of the justice conducting the hearing, as they appeared on January 10, 1925. *Newell on Slander and Libel* (4th ed.), section 456."

In the *Norfolk Post Corporation Case*, the *Post* said that Wright was held in connection with certain Colonial Place robberies. As a matter of fact he was held for robberies in Riverview as the record showed. The reporter, however, did not take the trouble to make the necessary examination that he might ascertain the facts, but relied upon a statement given to him by a detective. In doing this he assumed the risk. Wright was not charged with the Colonial Place robberies at all and for this error the paper had to pay. Here the

reporter could have read the indictment. This he appears not to have done and for his error his paper too must pay.

It is not necessary that the published report be verbatim, but it must be substantially correct. *Newell on Slander and Libel* (4th ed.), section 459, and this rule is not changed because the publication chanced to be in a newspaper. A newspaper has no more right to circulate a libel than has an individual. *Newell on Slander and Libel,* section 461.

"It is obvious that the privileges accorded to newspapers to publish court records does not justify a paper in charging a party to such record with crimes, offenses, and violations of law other than those which are treated in the record." 17 R. C. L. page 346.

Newspapers may publish court proceedings and they are privileged to do so, but every principle of public policy and good faith requires that these publications be substantially correct.

It may readily be conceded that there was no actual malice moving the defendant and that Mr. James published this account in good faith and as routine matter in the day's work, but that is not sufficient. Such a publication may damage a man and for that damage he is entitled to compensation which is all that is claimed here.

To charge one with robbery is libelous and actionable *per se. Harman* v. *Cundiff,* 82 Va. 239; *Moss* v. *Harwood,* 102 Va. 386, 46 S. E. 385; 17 R. C. L. pages 265, 267.

It is contended that the defendant is not liable for the circulation of this slander in Franklin county and that he never sent it there. *Bragg* v. *Elmore,* 152 Va. 312, 147 S. E. 275. To sustain this position we are cited to *Burt* v. *Advertiser Newspaper Co.,* 154

Mass., 238, 28 N. E. 1, 6, 13 L. R. A. 97, and to *Rigney v. W. R. Keesee & Co.*, 104 W. Va. 168, 139 S. E. 550, 54 A. L. R. 1139, among other cases. Holmes, J., in the first case thus sums up the law:

"Wrongful acts of independent third persons not actually intended by the defendant are not regarded by the law as natural consequences of his wrong, and he is not bound to anticipate the general probability of such acts any more than a particular act by this or that individual."

In the second case an agent addressed a letter to his sub-agent about their mutual business. This sub-agent published it. The court held (syllabus, 104 W. Va. 168, 139 S. E. 650): "The author of a libel, qualifiedly privileged, is not responsible for its republication, unless it appears that he contemplated or intended it should be made public."

In the instant case no paper containing this publication was sent to any subscriber in Franklin county, but certainly one copy was sent there to the town sergeant and he, or someone else, showed it to defendant and so to some extent, at least, its contents became a matter of common knowledge.

Mr. James, in testifying, said that these papers were sold to newsboys and to news stands, that they are taken to trains and might go into Franklin county, into Augusta county, or into any other county in the State. Indeed it was almost certain that sooner or later it would be carried into every county in the vicinity of Danville, and this the publisher must have known. It was a natural and probable result of the publication and for it Mr. James is liable.

Judge Sanborn, in *Maytag v. Cummins* (C. C. A.), 260 Fed. 74, 80, said: "A slander is preserved in no fixed or permanent form. It ordinarily soon fades out

and is forgotten like the sound that carries it. But one who publishes a libel in a newspaper or pamphlet which circulates among many people, or even in a private letter, thereby places it in permanent form where it will be more likely to continue in existence and to be read by many people, and where he causes it to be published in a newspaper or magazine he thereby evidences his intention that the readers shall read it, so that the natural and probable effect of publishing a libel is far more permanent, extensive and injurious to the victim than the mere speaking of the words it contains to one or more persons." *Zier* v. *Hofflin*, 33 Minn. 66, 21 N. W. 862, 53 Am. Rep. 9; *Bigley* v. *National Fidelity & Casualty Co.*, 94 Neb. 813, 144 N. W. 810, 50 L. R. A. (N. S.), 1040; *Elms* v. *Crane*, 118 Me. 261, 107 Atl. 852; 25 Cyc. 430.

It may be said in passing that from this it follows that the plea in abatement, even if filed, would ultimately have been overruled on the merits, and so at the most its rejection was but harmless error.

Moreover, the matters set up in the first count were set up in the second which was under the statute of insulting words where no publication is necessary. There the allegation as to place of publication was irrelevant, immaterial, need not have been made and was not traversable. *Norfolk & Western Ry. Co.* v. *Ampey*, 93 Va. 108, 25 S. E. 226; *Burks' Pl. & Pr.* (2nd ed.) page 270. There also is discussed and made plain the difference between jurisdiction and venue.

The verdict was not excessive and is sustained by the evidence. It may be said in passing that the apology relied upon in mitigation of damages was not very comprehensive and consisted in the main in the statement of Mr. Dillard, counsel for Mr. Powell.

We come next to those assignments which deal with instructions given and refused.

Instruction No. 1 given for the plaintiff.

■ "The court instructs the jury that newspapers have no peculiar privilege, but are liable for defamatory matter which they publish in the same manner as the rest of the community, and though published in good faith and in the honest belief in its truth, same is not privileged unless it is in fact true, and a paper in publishing defamatory statements takes the risk of the information on which same are based, being correct."

It is said that this instruction ignores the defense of a privileged communication; that there was no evidence to show circulation of the publication of November 18th, in Franklin county; that in reporting judicial proceedings it is wholly immaterial as to whether the charge made is in fact true and that neither malice nor injury appears from the evidence.

■■ The publication was substantially incorrect and so there is no privilege; it had been abused and lost. "Defamatory matter published in good faith, in the honest belief of its truth, if false, is not privileged because published as a mere matter of news." 36 C. J. page 1272. The paper containing this article was circulated in Franklin county and the issue is not whether a charge in a judicial proceeding was in fact true but whether such a charge was really ever made. It was not necessary to show malice in fact for punitive damages were not asked.

■ "From the publication of such libelous charges the law implies malice, as well as damages to the plaintiff; and the jury may, therefore, on proof of the publication only, render a verdict for substantial damages." *Williams Printing Co.* v. *Saunders*, 113 Va. 156, 73 S. E. 472, 478, Ann. Cas. 1913-E, 693.

This is Instruction No. 3:

"The court instructs the jury that the publica-tion of an accusation that a person has committed, or is charged with robbery, or an attempt to commit robbery, is libelous *per se*. And the court further in-structs the jury that the law presumes damages to result from the utterance or publication of words libelous *per se*, or of insulting words, that is, words which from their usual construction and common acceptation, are construed as insults and tend to vio-lence and breach of the peace, and that it is not neces-sary for the plaintiff to prove either actual or pecuniary loss in order to recover therefor substantial compensa-tory damages."

In addition to the objections urged to Instruction No. 3 it is said that neither malice nor damages can be implied from the publication of the report of a judicial proceeding, though the charges in such a pro-ceeding may have been libelous *per se*.

This as an abstract proposition is good law, but the indictment did not charge robbery as a motive and the attorney for the Commonwealth did not urge it and so the proposition contended for has no application. As for the right to recover compensatory damages see, in addition to authorities cited, *Ramsay* v. *Harrison*, 119 Va. 682, 89 S. E. 977; *Jordon* v. *Melville Shoe Corp.*, 150 Va. 101, 142 S. E. 387.

This is Instruction No. 5:

"The court instructs the jury that for the plain-tiff to recover substantial compensatory damages, actual malice (that is, a personal enmity or ill will on the part of the defendant), need not be shown. No privilege existing unless the charges were in fact true, and no allegation of their truth being plead, they are conclusively presumed to be false, and the court there-

fore tells the jury that their publication was not privileged. The court further tells the jury that a charge of robbery or attempt to commit robbery is libelous *per se*, that is from their very nature and without further proof thereof, and that malice is therefore implied from their publication alone, and damages implied to the plaintiff."

It was plainly proper.

This is Instruction No. 6:

█ "The court further instructs the jury that in determining the amount of damages to which the plaintiff may be entitled, you shall take into consideration all the facts and circumstances of the case as disclosed by the evidence, the nature and character of the charges, the language in which they were expressed, and its tendency, the occasion on which they were published, the extent of their circulation, the probable effect upon those to whose attention they came, and their natural and probable effect upon the plaintiffs' personal feelings, and his standing in the community in which he lives; and if under the other instructions herein, he is entitled to recover, you shall award such sum by way of damages as will fairly and adequately compensate him for the insult to him, including any pain and mortification and mental suffering inflicted upon him, and for any injury to his reputation as a man and citizen."

This instruction is amply sustained by Instruction No. 7, approved in *Ramsay* v. *Harrison, supra.*

There is no reversible error in any of the instructions given for the plaintiff.

█ Defendant's instructions A, B, C, D, E, F, G and K were tendered and refused. To them a general objection was made but the reasons therefor are not

pointed out and so they cannot be considered under Rule of Court No. 22. *Lorillard Co.* v. *Clay*, 127 Va. 734, 104 S. E. 384. We have, however, examined them and are of opinion that they should have been rejected. They touch upon matters already considered and set out defendant's views as to the law and his theory of his case.

Instruction C told the jury that if it believed that the published apology was agreed to and would be accepted in complete satisfaction, there could be no recovery. An apology under the Code, section 6240, goes only to mitigate damages. If plaintiff agreed to more it was an agreement without consideration. That such an agreement was in fact made, we think is not probable. Indeed, no statement made is retracted and all that is said about robbery and the motive for the murder was a statement of Mr. Dillard's claim. Of course, the apology published after action had been instituted could not avail.

The next assignment deals with the action of the trial court in refusing to set aside the verdict and has been considered. The last deals with the refusal of the court to strike from the record the article of November 18th, because James did not circulate it in Franklin county. This objection, as has been seen, is without merit.

The charge that plaintiff murdered Godfrey, moved by a desire to rob, nowhere supported by the evidence, and that this killing "has come as a startling revelation in methods of prohibition enforcement," wholly gratuitous, treads close upon actual malice; but since, as we have seen, vindictive damages are not claimed, that phase of the case cannot be considered. Certainly the plaintiff was entitled to compensation.

1. The demurrer should have been overruled.
2. The plea in abatement came too late.
3. The verdict is supported by the evidence.
4. The court committed no reversible error in its instructions.

For reasons stated, the judgment must be affirmed and it is so ordered.

*Affirmed.*