## LAW AND EQUITY COURT OF THE CITY OF RICHMOND

Isaiah Wynn

v.

Rufus M. Josey and
The Independent, Inc.

August 3, 1972

By JUDGE A. CHRISTIAN COMPTON

Enclosed you will find a copy of the order entered today overruling the plaintiff's motion for summary judgment (orally made) and sustaining the defendants' similar motion.

Both parties rely on the results of the discovery procedures in the file, that is, the answers to interrogatories and the depositions taken on March 20 and 28, 1972.

Briefly stated, the facts are that the defendant newspaper on June 1, 1971, published the erroneous fact that "[p]robable cause was found for certification of a charge of breaking and entering against [the plaintiff for an offense which occurred on] May 23 at Bowles Furniture Store . . . ."

In fact, the plaintiff had been charged with grand larceny in connection with the theft of two diamond rings at Barr Brothers Jewelers, which charge was subsequently dismissed.

The plaintiff here sues the publisher and owner of the Petersburg Progress-Index, a newspaper of general circulation in the Petersburg area, for compensatory and punitive damages based upon common law libel.

The issue is whether under the facts as submitted to the court at this stage of the proceedings, either party is entitled to summary judgment. As stated, the

court has concluded that the defendants' motion should be sustained. Rule 3:18.

More to the point, the issue is whether the plaintiff may sustain this libel action against the newspaper for a defamatory falsehood published therein relating to his involvement in a criminal prosecution, under the facts set forth herein.

The decision is controlled by *Rosenbloom* v. *Metromedia*, 403 U.S. 29, 29 L. Ed. 2d 296, 91 S. Ct. 1811 (1971). The crux of that decision was stated by Mr. Justice Brennan as follows:

> This Court has recognized this imperative: "[T]o insure the ascertainment and publication of the truth about public affairs, it is essential that the First Amendment protect some erroneous publications as well as true ones." St. Amant v. Thompson, 390 U.S. 727, 732, 20 L. Ed. 2d 262, 267, 88 S. Ct. 1323 (1968). We thus hold that a libel action, as here, by a private individual against a licensed radio station for a defamatory falsehood in a newscast relating to his involvement in an event of public or general concern may be sustained only upon clear and convincing proof that the defamatory falsehood was published with knowledge that it was false or with reckless disregard of whether it was false or not. Calculated falsehood, of course, falls outside "the fruitful exercise of the right of free speech." Garrison v. Louisiana, 379 U.S. 64, 75, 13 L. Ed. 2d 125, 133, 85 S. Ct. 209 (1964). 29 L. Ed. 2d at 316 and 137.

The facts of the case under consideration fall squarely under the decision in *Rosenbloom*. First, we have a private individual suing a newspaper for an admitted defamatory statement. The statement is no less defamatory even though the plaintiff committed another similar crime. *James* v. *Powell*, 154 Va. 96, 107 (1930). Second, the statement was a falsehood. Third, it related to the plaintiff's involvement in an event of public or general concern, that is, the "proper enforcement of [the] criminal laws." 29 L. Ed. 2d at 312.

The fourth and final consideration under *Rosenbloom* is whether there is "clear and convincing proof" that the false defamatory statement "was published with knowledge that it was false or reckless disregard of whether it was false or not."

*St. Amant, supra,* must be considered in determining whether as a matter of law these facts urged by the plaintiff measure up to such standard. Failure to exercise reasonable care is not enough for there to be liability upon the newspaper. Mr. Justice White states in *St. Amant*:

> These cases are clear that reckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication. Publishing with such doubts shows reckless disregard for truth or falsity and demonstrates actual malice.
>
> It may be said that such a test puts a premium on ignorance, encourages the irresponsible publisher not to inquire, and permits the issue to be determined by the defendant's testimony that he published the statement in good faith and unaware of its probable falsity. Concededly the reckless disregard standard may permit recovery in fewer situations than would a rule that publishers must satisfy the standard of the reasonable man or the prudent publisher. But New York Times and succeeding cases have emphasized that the stake of the people in public business and the conduct of public officials is so great that neither the defense of truth nor the standard of ordinary care would protect against self-censorship and thus adequately implement First Amendment policies. Neither lies nor false communications serve the ends of the First Amendment, and no one suggests their desirability or further proliferation. But to insure the ascertainment and publication of the truth about public affairs, it is essential that the First Amendment protect some erro-

neous publications as well as true ones. We adhere to this view and to the line which our cases have drawn between false communications which are protected and those which are not. 20 L. Ed. 2d at 267.

Here, the reporter reviewed the court docket in the clerk's office on the day of the preliminary hearing in the Petersburg Municipal Court and obtained the rest of the information that was in the story by being physically present in the courtroom during the proceedings. He made notes there and returned to his office to write the story. He had written a story without error of the plaintiff's arraignment several days earlier in connection with the theft of the rings. The error, as explained by the reporter, resulted from the fact that the Barr Brothers case and the Bowles Furniture case followed one another on the court docket. Because of this, the reporter got the names of the defendants in these separate charges mixed up. The plaintiff was incorrectly reported to be involved in the Bowles Furniture case rather than the Barr Brothers case.

There is no evidence nor is it alleged that the defendant Josey or any of the agents of the corporate defendant knew the plaintiff prior to the publication in question.

The facts here demonstrate negligence and an obvious failure to exercise reasonable care. Such a showing is not sufficient, however, and the plaintiff's case must fail.

Parenthetically, it should be noted that the impact of these federal cases on the state law of Virginia is really minimal. It is but a slight extension of the Virginia law concerning qualified privilege in such cases. *See* 12 M.J. *Libel and Slander*, § 20, p. 63, and cases cited therein.

For the reasons stated, and there being no "material fact genuinely in dispute," the defendants' motion for summary judgment is sustained.