54

## CIRCUIT COURT OF FAIRFAX COUNTY

Massey Energy Co.
and Don Blankenship

    v.

United Mine Workers of Am.,
AFL-CIO, CLC, et al.

August 4, 2006

Case No. (Law) 2005-3632

BY JUDGE R. TERRENCE NEY

    This matter came before the Court on Defendant West Virginia Consumers for Justice's Motion to Compel Discovery. The parties submitted briefs prior to the July 14, 2006, hearing. At the conclusion of oral argument, the Court took the matter under advisement.

### *Factual and Procedural Background*

    Plaintiffs, Massey Energy Co. ("Massey") and its chairman, chief executive officer, and president, Don Blankenship, operate mines in Virginia, West Virginia, and Kentucky. Massey is a Delaware corporation having its principal place of business in Richmond, Virginia. Blankenship is a West Virginia resident.

    Defendant West Virginia Consumers for Justice ("WVCJ") is a political advocacy group. Its president is Defendant Kenneth Perdue. Both are residents of West Virginia. Plaintiffs allege two counts of defamation against WVCJ and Perdue arising from a political advertisement that they broadcast on West

Virginia television. Additionally, Plaintiffs allege that WVCJ and Perdue each conspired with all other defendants to defame Plaintiffs and to injure them in their trade, business, or profession in violation of Virginia Code § 18.2-500.

The remaining defendants are United Mine Workers of America, AFL-CIO, CLC ("UMWA"), Cecil E. Roberts, its president, The Daily Gazette Company, Inc., publisher of the *Charleston Gazette* newspaper, and Charleston Newspapers, distributor of the same. These defendants are not party to this motion, nor is Perdue.

This Court has *in personam* jurisdiction over WVCJ because the group's allegedly defamatory advertisement reached some homes in Virginia and because the group allegedly conspired with Defendant UMWA, a Virginia resident. 69 Va. Cir. 118 (Fairfax County 2005) (Bellows, J.) (denying WVCJ and Perdue's Motion to Dismiss for Lack of Personal Jurisdiction).

### Plaintiffs' Claims of Defamation Against WVCJ

Plaintiffs' defamation claims against WVCJ arise from the group's television advertisement opposing the 2004 candidacy of Brent Benjamin for a seat on the West Virginia Supreme Court of Appeals. It begins with an image of Plaintiff Blankenship accompanied by the narration, "Out-of-state corporate bosses are spending millions supporting Brent Benjamin." The image of a child drinking from a glass of water appears as the narrator continues, "The head of one company, convicted of contaminating West Virginia's drinking water is spending almost two million dollars to support Benjamin. . . ." Text then appears, which reads, " 'cut off the health-care benefits, collective bargaining and job rights of about 5,000 of Horizon's employees and retirees.' *Charleston Gazette* 10/19/04." Meanwhile, the narrator continues, "after having eliminated the jobs and health benefits of hundreds of West Virginia families." The remainder of the advertisement juxtaposes images of Blankenship and Benjamin, while the narrator asks, "Who really is Brent Benjamin? A man out-of-state corporate bosses want on our Supreme Court, believing he will rule for them and against the workers of West Virginia."

Plaintiffs allege two instances of defamation in the advertisement. First, they allege that it accuses them of having been convicted of contaminating drinking water and, more specifically, of contaminating drinking water that was actually ingested by members of the public. Plaintiff Massey does not deny having pleaded guilty to criminal charges of exceeding applicable limits on the discharge of pollutants into a stream, but it urges that these convictions did not pertain to drinking water.

Second, Plaintiffs allege that the advertisement accuses them of involvement in terminating the employment and benefits of workers at mines owned by Horizon Natural Resources Company ("Horizon"). Horizon sold Massey two mines, Cannelton Hollow and Starfire. WVCJ alleges that Horizon terminated workers and their benefits shortly before the sale of each mine. Plaintiffs insist that they had no involvement in these actions.

*Discovery Sought*

The discovery that WVCJ moves this Court to compel falls into six general categories. First, WVCJ seeks discovery relating to Plaintiffs' possible involvement in the Benjamin campaign and, in particular, to their possible involvement with an advocacy group called And for the Sake of the Kids.

WVCJ's First Request for Production of Documents and Things ("Request") to Blankenship Nos. 18-20; WVCJ's First Set of Interrogatories ("Interrogatories") to Blankenship and Interrogatories to Massey Nos. 10-11. WVCJ argues that this information is relevant to its defense that the Plaintiffs are public figures. Such a defense, if successful, would require Plaintiffs to prove actual malice in order to recover for defamation. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S. Ct. 2997, 41 L. Ed. 2d 789 (1974); *Jordan v. Kollman*, 269 Va. 569, 576, 612 S.E.2d 203 (2005). Blankenship does not deny donating to And for the Sake of the Kids, but whether he played a more active role is in dispute.

Second, WVCJ seeks discovery relating to all incidents of water pollution by Massey, Request to Blankenship No. 22 and Request to Massey No. 21, and to all fines, citations, and litigation arising therefrom. Interrogatories to Massey No. 9; Request to Blankenship No. 25; Request to Massey No. 24.

Third, WVCJ seeks discovery relating to Plaintiffs' criminal convictions for polluting. Request to Blankenship Nos. 23 and 24; Request to Massey Nos. 22 and 23. WVCJ argues that these categories of discovery are relevant to its claim of substantial truth with respect to its statement that Plaintiffs were convicted of contaminating drinking water. WVCJ also argues that the information is relevant to Plaintiffs' reputations and thus to their damages.

Fourth, WVCJ seeks discovery relating to Massey's termination of any employees or their benefits. Interrogatories to Massey Nos. 12-14.

Fifth, WVCJ seeks discovery relating to the Cannelton Hollow and Starfire mines that Massey purchased from Horizon. Interrogatories to Blankenship and Interrogatories Massey Nos. 2-4; Request to Blankenship and Request to Massey Nos. 2-12. WVCJ argues that these categories of

information are relevant to its claim of substantial truth with respect to its statement that Plaintiffs terminated employees and their benefits.

Sixth, WVCJ seeks discovery on a variety of matters relating to Plaintiffs' damages. This discovery is sought and opposed on a variety of grounds that must be addressed individually.

*Analysis*

*Scope of Discovery in General*

The Supreme Court of Virginia has defined the limits of discovery as follows:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

Va. Sup. Ct. R. 4:1(b)(1).

Discovery is not always permitted to reach these outer limits. Rather:

> [T]he frequency or extent of use of the discovery methods set forth in subdivision (a) shall be limited by the court if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the discovery is unduly burdensome or expensive, taking into account the needs of the case, the amount in controversy, limitations on the parties' resources, and the importance of the issues at stake in the litigation.

*Id.*

In short, matter to be discovered must be relevant to the claims or defenses of a party and must be reasonably calculated to lead to the discovery of admissible evidence. Further, discovery may not exceed the additional limitations outlined above. Each discovery request to which WVCJ wishes the Court to compel a response must be evaluated for conformity with these requirements.

### Plaintiffs' Possible Involvement in the Benjamin Campaign

Plaintiffs question how discovery regarding their possible involvement in the Benjamin campaign is relevant to their alleged status as public figures. The relevance of this information is clear. The basic index of public-figure status is "the nature and extent of an individual's participation in the particular controversy giving rise to the defamation." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 352, 94 S. Ct. 2997, 41 L. Ed. 2d 789 (1974); *accord Fleming v. Moore*, 221 Va. 884, 892, 275 S.E.2d 632, 637 (1981).

It is not dispositive that Plaintiffs neither appeared in nor publicly endorsed the advertisements run by And for the Sake of the Kids. Although public-figure status requires that one has "assumed a role of special prominence in the public controversy," *Wells v. Liddy*, 186 F.3d 505, 540 (4th Cir. 1999); *Fitzgerald v. Penthouse Int'l*, 691 F.2d 666, 668 (4th Cir. 1984), prominence is not equivalent to general notoriety. *Reuber v. Food Chemical News, Inc.*, 925 F.2d 703, 709 (4th Cir. 1991).

Plaintiffs also object to the discovery requests on the ground that they are overly broad and unduly burdensome. Indeed, Plaintiffs raised this objection with respect to nearly every individual discovery request of WVCJ, yet they failed to seriously advocate it with regard to any. Such purely *pro forma* objections can be given but little weight, and it is enough to observe that WVCJ's discovery requests appear no broader than Plaintiffs'. Plaintiff Massey's First Request for Production of Documents and Things was an exhibit to WVCJ's memorandum in support of the instant motion.

For these reasons, Plaintiffs must respond to WVCJ's requests for discovery regarding their possible involvement in the Benjamin campaign. However, certain of those requests encompass matters of public record. Interrogatories to Blankenship Nos. 10 and 11. Such information is equally accessible to both sides and need not be disclosed. *See* Va. Sup. Ct. R. 4:1(b)(1).

### Incidents of Water Pollution Not Leading to Convictions

Plaintiffs argue that incidents of water pollution that did not give rise to criminal convictions, including those incidents that resulted in civil fines, citations, or litigation, are irrelevant to the substantial truth of WVCJ's statement that Plaintiffs were *convicted* of contaminating drinking water. The court agrees, but finds that the discovery is relevant to Plaintiffs' damages.

It has long been the law in Virginia that substantial truth is a complete bar to any defamation action. *Alexandria Gazette Corp. v. West*, 198 Va. 154, 159, 93 S.E.2d 274, 279 (1956); *Jordan v. Kollman*, 269 Va. 569, 575-76, 612 S.E.2d 203, 206-07 (2005). Virginia courts have generally defined "substantial truth" negatively. Thus it has been said that "[s]light inaccuracies of expression are immaterial provided the defamatory charge is true in substance," *Saleeby v. Free Press, Inc.*, 197 Va. 761, 763, 91 S.E.2d 405, 407 (1956), and that "[a] plaintiff may not rely on minor or irrelevant inaccuracies to state a claim for libel." *Jordan*, 269 Va. at 576, 612 S.E.2d at 207.

Other courts have attempted to define "substantial truth" in greater detail. Thus it is said that "[t]he falsity of a statement and the defamatory `sting' of the publication must coincide – that is, where the alleged defamatory `sting' arises from substantially true facts, the plaintiff may not rely on minor or irrelevant inaccuracies to state a claim for libel." *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1092 (4th Cir. 1993). Further, "a statement is not considered false unless it would have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 517, 111 S. Ct. 2419, 115 L. Ed. 2d 447 (1991).

The issue presented here might therefore be formulated in the following terms. Does the "sting" of WVCJ's advertisement lie in its accusation that the Plaintiffs polluted or in its accusation that the Plaintiffs were *convicted* of polluting? Additional authorities lend guidance on this question.

The Restatement provides as follows:

> If the defamatory statement is a specific allegation of the commission of a particular crime, the statement is true if the plaintiff did commit that crime. If the accusation is general and implies the commission of unspecified misconduct of a particular type, the statement is true if the plaintiff committed any misconduct of that type.

Restatement (Second) of Torts § 581A, comment c; *see James v. Powell*, 154 Va. 96, 106-07, 152 S.E. 539, 543 (1930) ("To say that a man committed a

felony which he did not commit, is a libel, and this is true even though he had, in fact, committed another felony of the same general character."). And further:

> It is also the truth or falsity of the particular charge that is to be determined. It is not enough that the accused person is found to have engaged in some other substantially different kind of misconduct even though it is equally or more reprehensible.

Restatement (Second) of Torts § 581A, comment f.

Here, WVCJ accused Plaintiffs not only of a specific type of crime but also of a specific type of criminal conviction. The fact that Plaintiffs may have committed other misdeeds is not coextensive with the "sting" of this accusation. Such misdeeds are therefore not relevant to the accusation's truth. In short, a defendant in a defamation action may not introduce into evidence every bad act of the plaintiff for the purpose of showing substantial truth. *Id.; see Powell*, 154 Va. at 106-07, 152 S.E. at 543.

Yet, on the other hand, as to reducing the plaintiffs' damage award, the question is closer. May a plaintiff be of such bad reputation as to be "defamation proof"? *See Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222 (7th Cir. 1993). And should not a defendant be able to show that to be so? Whether such evidence would be more prejudicial than probative, and hence inadmissible, is best left to the trial judge. At this point, however, WVCJ should be permitted discovery relating only to fines, civil citations, or court-ordered sanctions for water pollution by Plaintiffs that did not result in criminal convictions. This is not to suggest anything as to the later admissibility of any such evidence obtained.

The discovery sought, however, may encompass privileged matters and matters of public record. Such information need not be disclosed. *See* Va. Sup. Ct. R. 4:1(b)(1).

### Plaintiffs' Criminal Convictions for Polluting

Plaintiffs argue that discovery pertaining to their convictions for polluting are not relevant to the substantial truth of statements made in WVCJ's advertisement because neither plaintiff was convicted of polluting *drinking* water in particular.

The Court finds that the matter is relevant, if for no other reason than that any water pollution may find its way into a source of drinking water and that the discovery sought may yield evidence on that point. Its admissibility at trial is left for a later day.

Nonetheless, much material pertinent to Plaintiffs' convictions will inevitably be protected by attorney-client privilege, and other material will be in the public record. Such material need not be disclosed. *See id.* Otherwise, Plaintiffs must respond to WVCJ's requests.

### Massey's Termination of Workers
### Not Employed at Cannelton Hollow or Starfire

Plaintiffs argue that the reference to their "having eliminated the jobs and health benefits of hundreds of West Virginia families" in WVCJ's advertisement pertains exclusively to actions taken at Horizon mines. Therefore, Plaintiffs argue, Massey's employment practices elsewhere are irrelevant to the substantial truth of WVCJ's advertisement.

The Court agrees that the narration in the advertisement, being juxtaposed with printed text referencing "Horizon employees and retirees," admits of no other interpretation than that advanced by Plaintiffs. Although the *Charleston Gazette* article quoted in the advertisement may have referred to actions taken at the Cannelton Hollow mine specifically, the quoted text is not so limited. Therefore, WVCJ may obtain discovery on matters related to the Starfire mine as well. WVCJ is therefore not entitled to discovery relating to terminations at mines other than those purchased from Horizon.

### Cannelton Hollow and Starfire Mines

Plaintiffs state that they have agreed to produce all "relevant" materials pertaining to the Cannelton and Starfire mines. They quickly add that no relevant materials exist because Plaintiffs had no hand in terminating the employment or benefits of Horizon's workers.

It is not for Plaintiffs to decide what matters are relevant and what are not. Any involvement of Plaintiffs' in Horizon's actions is more likely to be shown by circumstantial evidence than by a "smoking gun" document of plain relevance. Particularly in light of Plaintiffs' failure to deny that it twice purchased mines from Horizon shortly after substantial layoffs took place, WVCJ is entitled to broad discovery relating to Plaintiffs' dealings with Horizon.

However, Plaintiffs need not produce any court documents relating to Horizon that are in the public record, as these are equally accessible to both sides. *See* Va. Sup. Ct. R. 4:1(b)(1).

*Plaintiffs' Damages*

WVCJ requests that Plaintiff Blankenship provide all medical records from the year 2000 to the present if he claims that conduct of WVCJ and Perdue caused him emotional distress. Request to Blankenship No. 36. Plaintiffs object that such a request is "premature," as Blankenship has not yet claimed emotional distress as an element of his damages.

Plaintiffs have by now filed three amended motions for judgment, and it is certainly no longer "premature" to expect them to know all the elements of their damages. WVCJ is therefore entitled to discovery. Of course, no response is necessary if Blankenship does not claim to have suffered emotional distress. However, any such claim shall be deemed waived should Blankenship not respond.

WVCJ also seeks extensive discovery of Massey's sensitive employment and business practices to evaluate Massey's claims of harm to its hiring efforts and other endeavors. Interrogatories to Massey Nos. 10 and 15; Request to Massey Nos. 34-38. Plaintiffs state that they have agreed to answer some of these requests, provided that a suitable protective order is obtained. Plaintiffs currently have a Motion for Protective Order pending before this Court.

The Court finds that WVCJ is entitled to the discovery, as the requests are no broader or more burdensome than necessary for WVCJ to defend against Plaintiffs' action. However, to compel Plaintiffs to respond before their Motion for Protective Order can be heard would be premature. Accordingly, Plaintiffs must respond but need not do so until after an order is entered on their Motion. However, a response to Request to Massey No. 38 may not be so delayed, because Massey did not raise the objection that a response to this request would require the disclosure of sensitive business information.

WVCJ also requests an itemization of Plaintiffs' damages. Interrogatories to Blankenship Nos. 8-9 and Interrogatories to Massey No. 8. Plaintiffs object to these requests on the basis that they are vague and ambiguous and seek disclosure of privileged information. The Court can find nothing vague or ambiguous in the text of WVCJ's requests. Accordingly, Plaintiffs must respond but need not disclose privileged information.

WVCJ also seeks an itemization of all of Plaintiff Blankenship's sources of income over a period of years. Interrogatories to Blankenship No. 13. This matter is relevant to Blankenship's claim of "lost business relationships and business opportunities." Accordingly, Blankenship must respond.

WVCJ also requests documents relating to Blankenship's claims of humiliation and embarrassment resulting from the alleged defamation. Request to Blankenship No. 35. Blankenship states that he will produce these documents. He must do so.